Gayle **PARKER**, Plaintiff,

v.

George C. **WALLACE**, as Governor, the State of Alabama; and James C. White, Sr., as Commissioner, the Department of Revenue, Defendants.

Civ. A. No. 83–T–195–N.

United States District Court,
M.D. Alabama, N.D.

Oct. 10, 1984.

**740**

Julian McPhillips, and Dexter Hobbs, Copeland, Franco, Screws & Gill, Montgomery, Ala., for plaintiff.

Richard N. Meadows, Rosa H. Davis, Asst. Attys. Gen., Montgomery, Ala., Ken Wallis, Legal Advisor to the Governor, Montgomery, Ala., for Wallace.

John J. Breckenridge and Melissa C. Bowen, Asst. Attys. Gen., Montgomery, Ala., for White.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

This lawsuit is, for the most part, a challenge to the political patronage process for the appointment of county license inspectors for the State of Alabama. The plaintiff, Gayle Parker, claims that she was discharged as an inspector for Montgomery County, Alabama for reasons of political affiliation, in violation of the first and fourteenth amendments to the U.S. Constitution. For reasons that follow, the court has concluded that her claim has merit and that she is thus entitled to appropriate relief.

### I.

Approximately 48 of Alabama's 67 counties have license inspector positions. According to statute, the inspectors are appointed for indefinite terms by the state commissioner of revenue. The inspectors are responsible for assuring that all persons, firms, and corporations required by

law to obtain licenses have done so. Although they have substantial enforcement powers, including the authority to arrest, the inspectors have very little discretion in handling individual cases. For example, they are required by law to issue citations to those who are delinquent in obtaining the required licenses and to institute criminal proceedings against all delinquents who fail to obtain the required licenses after they have been cited. However, they have broad discretion in the overall management of their offices. They are authorized to hire personnel, including deputy inspectors, and they are responsible for setting policies and formulating plans for their offices, subject to the approval of the revenue commissioner. 1975 Ala.Code § 40–12–10.[1]

1. Section 40–12–10 provides that:

(a) The department of revenue is hereby authorized and empowered to appoint a license inspector for each county; provided, that the same person may be appointed for more than one county, except as otherwise provided by law.

(b) It shall be the duty of the license inspector to scrutinize the records and stubs kept in the office of the probate judge and also to examine the license records of each city or town located in the county or counties of which he has been appointed license inspector; and, if it shall be reported to any license inspector or come to his knowledge that any person, persons, firms or corporations have failed or refused to take out a license for a business or occupation for which a license is required by the state or have failed or refused to take out a license for operating any motor vehicle or trailer for which a license is required by law, the license inspector shall thereupon cite such delinquent to appear before the license inspector at the courthouse of the county in which such citation is issued and to show cause why the license or privilege tax required by law has not been paid and, at the same time, shall file with the probate judge of the county a copy of such citation showing service on the delinquent.

(c) If the license inspector shall discover any motor vehicle being operated without a proper or legal license, he shall cite the operator of the motor vehicle; and, in filing copy of such citation with the probate judge, he shall show on such citation the particular motor vehicle operated without legal license, as well as the operator thereof.

(d) The probate judge must in all cases, in addition to the other penalties required to be collected by him, collect the citation fee, if any, due the license inspector before issuing any license; and, in case of a motor vehicle where a license is taken out in the name of person not cited, the citation fee shall be collected if the citation filed shows the motor number of such vehicle. When any license is due the license inspector shall cause the delinquent to appear before the probate judge of the county and take out the same, but such probate judge shall not have the authority to determine the liability of such delinquent for such license and shall in each case issue a license to the applicant upon the payment by him of the amount or amounts prescribed by this title. If such delinquent shall fail or refuse to take out a license, the license inspector shall institute or cause to be instituted criminal proceedings against such delinquent before any court having jurisdiction of such offense. In case of emergency the license inspector must commence the criminal proceedings in the first place.

(e) All license taxes levied by this title, except as otherwise provided, shall be due and payable as of October 1 of each year and shall be delinquent November 1 thereafter. Where any license issuable by the probate judge or commissioner of licenses shall be delinquent, the same shall be subject to a penalty of 15 percent of the amount of the license, which penalty must be collected by the probate judge or commissioner of licenses when the license is taken out together with interest at six percent from the date of delinquency; provided, that the penalty for delinquency in payment of motor vehicle licenses shall in no case be less than $1.50.

(f) It shall be unlawful for any probate judge or other officer to fail to collect such penalties when issuing such license.

(g) The probate judge, in remitting such penalties, shall file report with the comptroller and with the department of revenue showing the amount of such penalties collected, from whom, and for what, the amounts paid to the license inspector and the amount remitted; provided, that in counties where the license inspector is payable on a salary basis, all fees and penalties shall be paid into the treasury, except as otherwise provided by law.

(h) If a criminal prosecution shall be commenced either by affidavit and warrant, or information or indictment, the license inspector shall be paid 15 percent of the fine or penalty thereafter imposed in the case, all costs and penalties to be paid in money. The residue shall be paid, two thirds into the treasury and one third to the county.

(i) License inspectors are authorized to appoint deputies, and the acts of such deputies shall be recognized as their acts, and they shall be responsible for the same. Such deputies shall receive no compensation for their services out of the state or county revenue, except in cases as otherwise provided in this title.

(j) All citations to delinquents shall be served by any lawful officer or by the license

By local law applicable only to Montgomery County, the county commission is responsible for paying the inspector's salary and for financing the operation of the inspector's office. The county receives "[a]ll fees, commissions, allowances, percentages and other charges" received by the inspector. 1978 Ala.Local Act No. 385.[2]

Although the state commissioner of revenue is authorized by law to appoint the inspectors for an indefinite period, it has been the practice that each new governor appoints new inspectors across the state. Therefore, in 1979, when Forest James succeeded George C. Wallace as governor of the State of Alabama, he adhered to this practice even though both he and Wallace were of the same political party, the Democratic Party. James replaced the Wallace inspector appointee for Montgomery County with his own appointee, plaintiff Gayle Parker. Parker and her husband had actively supported James in the last election.

In 1983, Wallace became governor again. He replaced all but four or five of the persons then holding inspector positions. He appointed, without exception, those persons recomended by his county campaign coordinators. A critical requirement for a recommendation from a coordinator was demonstrated political support for Wallace in the last election. Parker did not campaign for Wallace. She was replaced by Nancy Hendry, who had actively campaigned for Wallace and had been recommended by Wallace's campaign co-coordinators for Montgomery County.[3]

inspector or his deputy, who shall be allowed as a fee $1.50 for each citation served, to be taxed against the delinquent.

(k) License inspectors shall have the same power to arrest persons violating the revenue laws of the state as is now vested in the sheriffs of the state and shall receive the same fees for such service.

(l) The department of revenue shall keep a record by counties in which, each month, shall be entered the number of licenses issued by the probate judge for each and every business or occupation for which a state license tax is required, and such record may be compared each month with the number of licenses issued by cities and towns for the same business or occupation.

(m) The license inspector shall be required to report to the department of revenue the reason for the failure to collect any licenses due the state which may be evidenced by the comparison of the report of the probate judge and the report made of licenses issued by cities or towns.

(n) It shall be the duty of the county commissions of the several counties to supply the license inspector with necessary citation blanks and other necessary forms to be paid for by the county.

(o) The salary of such license inspector and the expenses of his office shall be paid by warrant of the comptroller upon sworn itemized account filed monthly by such license inspector and approved by the department of revenue, except as otherwise provided by law.

2. The evidence does not reflect whether other counties with license inspectors have similar local acts.

The local act for Montgomery County provides that:

Section 1. The license inspector of Montgomery County shall receive an annual salary of $15,000.00 payable in equal monthly installments from the general fund of the county. Said salary shall be the entire compensation received by the license inspector in any official and ex officio capacity and shall be in lieu of all fees, commissions, allowances, percentages and other charges heretofore paid to the license inspector.

Section 2. All fees, commissions, allowances, percentages and other charges heretofore collected for the use of the license inspector shall hereafter be collected and paid into the general fund of the county, except as provided hereinafter.

Section 3. The governing body of Montgomery County shall provide the license inspector with such office personnel, clerks, deputies, and such quarters, books, stationery, furniture, equipment and other such conveniences and supplies as such governing body may consider necessary for the proper and efficient conduct of the office. The compensation of any personnel so provided shall be fixed by said governing body and shall be paid in equal monthly installments out of the general fund of the county.

3. The following letter from Wallace's Montgomery County campaign co-coordinators, recommending Hendry for the inspector position for Montgomery County, dramatically demonstrates the importance of active political support:

Dan Chambliss and I strongly recommend Nancy I. Hendry for the above job. We want her to have this job and it is very important to us. She is very capable and will do a fine job. Nancy worked with us throughout the entire campaign on a daily basis. She worked at the campaign office from 8:00 a.m. to 5:00

Parker refused to go along with the appointment practice and filed this lawsuit seeking, among other things, reinstatement to her job, backpay, and attorney fees.

## II.

Plaintiff Gayle Parker's lawsuit is premised on 42 U.S.C.A. § 1983 and is against defendants George C. Wallace and James C. White, Sr., the governor and revenue commissioner of the State of Alabama, respectively. As already stated, she claims that the defendants discharged her from her position as license inspector for Montgomery County for reasons of political affiliation, in violation of the first and fourteenth amendments to the U.S. Constitution. This court's jurisdiction has been properly invoked pursuant to 28 U.S.C.A. § 1343.

It is now "settled that a state cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick v. Myers,* 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983). Thus, "official pressure upon employees to work for political candidates not of the worker's own choice constitutes a coercion of belief in violation of fundamental constitutional rights." 461 U.S. at 149, 103 S.Ct. at 1691. On the other hand, it is well recognized that the state, as employer, has an interest "in promoting the efficiency of the public services it performs through its employees." 461 U.S. at 142, 103, S.Ct. at 1687, *quoting Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968).

### A.

The first issue for the court in weighing and considering these competing interests is whether Parker was, in fact, discharged for partisan political reasons. The court finds that she was.

As plaintiff, Parker has the initial burden of proof of establishing by a preponderance of evidence that political affiliation was a substantial or motivating factor in the decision to discharge her. If she meets this burden, the burden of proof shifts to the defendants to show by a preponderance of evidence that they would have reached the same decision if political affiliation had not played a role. *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1976). *See also Branti v. Finkel,* 445 U.S. 507, 512 n. 6, 100 S.Ct. 1287, 1291 n. 6, 63 L.Ed.2d 574 (1980); *Tanner v. McCall,* 625 F.2d 1183, 1190–95 (5th Cir.1980).

Parker has established that political affiliation played a substantial and motivating role in the decision to discharge her. The evidence reflects that when Wallace became governor in 1983, he followed the past practice of replacing license inspectors who served under the former administration. Wallace's appointments were based, without exception, upon recommendations from his county campaign coordinators. These recommendations were usually purchased at the price of campaign work. *See Branti v. Finkel,* 445 U.S. at 516 n. 11, 100 S.Ct. at 1294, n. 11. This appointment process was but a form of political patronage. *See Elrod v. Burns,* 427 U.S. 347, 353–54, 96 S.Ct. 2673, 2679–80, 49 L.Ed.2d 547 (1976) (plurality opinion).

Parker's dismissal was a product of this patronage process. Parker did not openly demonstrate any support for Wallace and was dismissed; whereas, Hendry actively campaigned for Wallace and was recommended for and appointed inspector based on her demonstrated political support for Wallace. No consideration was given to Parker's ability and past record as license inspector. With this evidence, it cannot be seriously contested that political affiliation played, at least, a substantial and motivating role in Parker's dismissal. *See Branti*

p.m. each day and also at night and weekends. Her entire family was involved in the campaign and they are very much in need of this job.

If you have any questions, please let me know. We will very much appreciate her appointment to this position.

*v. Finkel,* 445 U.S. at 516–17 & n. 11, 100 S.Ct. at 1293–94 & n. 11.

Nonetheless, the defendants maintain that Parker would have been dismissed in the absence of partisan politics. The court disagrees. First, the defendants contend that Parker was a poor license inspector. However, the evidence reflects that Parker was a conscientious, effective inspector, who performed the duties of her office exceptionally well. Furthermore, the evidence reflects that any consideration the defendants gave Parker's performance came long after she was dismissed and Hendry appointed. The defendants' challenge to Parker's performance record and ability is a pretextual afterthought.

Second, the defendants contend that they appointed Hendry because of her financial circumstances. The evidence does reflect that Hendry needed a job to support her family. However, Hendry's financial condition was a critical factor only in selecting her over other active Wallace supporters and campaigners. The bottom line for appointment to the inspector position in Montgomery County was recent active support for Wallace and a recommendation from Wallace's county campaign co-coordinators. In the absence of partisan politics, the defendants would not have appointed Hendry, who had no experience as a license inspector and simply needed a job. Rather, they would have retained Parker, who had direct experience and an excellent record as a license inspector.

### B.

■ Now that the court has found that Parker was dismissed for patronage reasons, the critical issue is whether the dismissal violated her rights under the first and fourteenth amendments to the U.S. Constitution. The court finds that it did.

In *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), the Supreme Court addressed for the first time the specific issue of patronage discharges and held that certain non-civil-service employees of a sheriff's office could not be dismissed because they were not affiliated with or sponsored by the political party of the current sheriff. A majority of the Court concluded in plurality and concurring opinions that the first and fourteenth amendments prohibited the discharge of a nonpolicymaking, nonconfidential government employee on the sole ground of party affiliation. 427 U.S. at 367–68, 96 S.Ct. at 2687 (Brennan, J., plurality opinion); 427 U.S. at 375, 96 S.Ct. at 2690 (Stewart, J., concurring). In his plurality opinion for the Court, Justice Brennan observed that

patronage dismissals severely restrict political belief and association. Though there is a vital need for government efficiency and effectiveness, such dismissals are on balance not the least restrictive means for fostering that end. There is also a need to insure that policies which the electorate has sanctioned are effectively implemented. That interest can be fully satisfied by limiting patronage dismissals to policymaking positions. Finally, patronage dismissals cannot be justified by their contribution to the proper functioning of our democratic process through their assistance to partisan politics since political parties are nurtured by other, less intrusive and equally effective methods. More fundamentally, however, any contribution of patronage dismissals to the democratic process does not suffice to override their severe encroachment on First Amendment freedoms. We hold, therefore, that the practice of patronage dismissals is unconstitutional under the First and Fourteenth Amendments. . . .

427 U.S. at 372–73, 96 S.Ct. at 2689.

Later, in *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287 (1980), the Supreme Court clarified the circumstances where a policymaking or confidential government employee may be dismissed on the basis of party affiliation. In a majority opinion, the Court concluded that "the ultimate inquiry is not whether the label policymaker or confidential fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the

effective performance of the public office involved." 445 U.S. at 518, 100 S.Ct. at 1295. Thus, the rule of *Elrod* and *Branti* is that a government employee may not be dismissed for reasons of political party affiliation unless party affiliation is an appropriate requirement for the effective performance of the employee's duties.

In *Branti*, the Supreme Court held that assistant public defenders could not be discharged on the basis of party affiliation. The Court observed that although the assistants "had broad responsibilities with respect to particular cases" and "made decisions in the context of specific cases," 445 U.S. at 511, 100 S.Ct. at 1291, their area of discretion "relate[d] to the needs of individual clients and not to any partisan political interests," 445 U.S. at 519, 100 S.Ct. at 1295. The Court also observed that although assistants are "bound to obtain access to confidential information arising out of various attorney-client relationships, that information has no bearing whatsoever on partisan political concerns." *Id.* The Court, therefore, concluded that political affiliation or allegiance to a party was not an appropriate requirement for the office of assistant public defender. *Id.*

Admittedly, the *Branti* and *Elrod* cases involved employment decisions based upon political affiliation to a party. Here, the issue is political affiliation to a candidate. This difference is not significant. Employment requirements of affiliation to a candidate are subject to the same first amendment considerations as requirements of affiliation to a party. *McBee v. Jim Hogg County, Texas*, 703 F.2d 834, 838 n. 1 (5th Cir.1983), *vacated on other grounds*, 730 F.2d 1009 (5th Cir.1984) (en banc).

In the present case, the defendants correctly note that Parker is a part of the executive branch of state government and that, subject to the approval of the revenue commissioner, she is empowered to set poli-

cies for her office and formulate plans for the implementation of those policies. They note that she must also work with the Montgomery County Commission, which is responsible for financing her office. The defendants argue that Parker is, for the most part, an emissary of the governor. And they ask that the court infer from these circumstances that political affiliation to the governor is an appropriate ingredient for the effective performance of her office. *See, e.g., Sweeney v. Bond*, 669 F.2d 542, 546 (8th Cir.), *cert. denied*, 459 U.S. 878, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982). *See also Ness v. Marshall*, 660 F.2d 517, 520–22 (3rd Cir.1981); *Newcomb v. Brennan*, 558 F.2d 825, 829–30 (7th Cir.), *cert. denied*, 434 U.S. 968, 98 S.Ct. 513, 54 L.Ed.2d 455 (1977).

If such inference could reasonably be made, it is soundly refuted by those who are most knowledgeable about the operation of the office of license inspector. Wallace, who has occupied the office of Governor of the State of Alabama for much of the last 25 years, testified in this case that, although license inspectors have substantial discretion in the administration of their office, political affiliation to a party or person is not necessary to the effective performance of the office.[4] Similarly, the present[5] and immediate past state revenue commissioners[6] and the present[7] and immediate past Montgomery County license inspectors[8] testified that political affiliation is immaterial to the effective performance of the office of license inspector. It is implicit from the testimony of these officials that "less drastic means for insuring government effectiveness and employee efficiency are available to the State. Specifically, [license inspectors] may always be discharged for good cause, such as insubordination or poor job performance, when those bases in fact exist." *Elrod v. Burns*,

---

4. Wallace deposition of September 19, 1983, pp. 7–10.

5. White deposition of August 17, 1983, pp. 28–30.

6. Testimony of Ralph Eagerton at trial.

7. Hendry deposition of August 17, 1983, pp. 37–39.

8. Testimony of Parker at trial.

427 U.S. at 366, 96 S.Ct. at 2686.[9] Moreover, the evidence reflects that although license inspectors have access to much confidential information in the performance of their duties, "that information has no bearing whatsoever on partisan political concerns." *Branti v. Finkel*, 445 U.S. at 519, 100 S.Ct. at 1295.

Confronted with this evidence, this court must conclude that, while Parker has policymaking responsibilities and access to confidential information, political affiliation or allegiance to a party or person is not an appropriate requirement for the effective performance of her office. *See Branti v. Finkel, supra.* The court therefore holds that the defendants' dismissal of Parker for reasons of political affiliation violated her rights under the first and fourteenth amendments to the U.S. Constitution.[10] Parker is therefore entitled to appropriate relief.

### III.

■ Parker seeks reinstatement to the position of license inspector for Montgomery County. The court is not persuaded that Parker should be immediately reinstated to this position. To reinstate her would require the displacement of an innocent person, Nancy Hendry, who is not a party to this case. However, the court will require that the defendants offer Parker another position in state government in the area of Montgomery, Alabama, for which

she is qualified and which has a salary comparable to that of license inspector for Montgomery County—if such a position is available. The court will also require that the defendants offer Parker the Montgomery County license inspector position when the position becomes available again.[11]

Parker also seeks backpay. She is entitled to an award of backpay to compensate her for the loss of her job. However, the defendants maintain that they are immune from backpay in both their "official" and "individual" capacities.[12]

■ Any award of backpay from the defendants in their official capacities as state officials, whether viewed as damages for illegally dismissing Parker or an aspect of equitable relief, would be retroactive and must come from the state treasury. Such an award is barred by the eleventh amendment to the U.S. Constitution. *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1977); *Hander v. San Jacinto Junior College*, 519 F.2d 273, 278 (5th Cir. 1975). *See also United Carolina Bank v. Board of Regents*, 665 F.2d 553, 561 (5th Cir.1982). Therefore, Parker may not recover backpay from the defendants in their official capacities.

■ The defendants maintain that they are entitled to "qualified immunity" from any award of backpay against them in their individual capacities. Qualified immunity is generally available to persons in their individual capacities "insofar as their

9. It appears that the only persons connected with this lawsuit who seriously maintain that political affiliation is an appropriate and necessary requirement for the office of license inspector are the defendants' lawyers, but not the defendants.

10. The defendants also argue that Parker as beneficiary of the patronage system should not now be allowed to challenge that system. The Supreme Court has rejected this argument both explicitly, *see Branti v. Finkel*, 445 U.S. at 512 n. 6, 100 S.Ct. at 1291 n. 6; *Elrod v. Burns*, 427 U.S. at 359 n. 13, 96 S.Ct. at 2683 n. 13, and implicitly, *see Branti v. Finkel*, 445 U.S. at 526 n. 6, 100 S.Ct. at 1298 n. 6 (Powell, J., dissenting); *Elrod v. Burns*, 427 U.S. at 380–81, 96 S.Ct. at 2692–93 (Powell, J., dissenting).

11. The defendants may want to consider temporarily appointing co-inspectors for Montgomery County. The evidence reflects that there may be enough work in the county for two inspectors.

12. The defendants raised at trial whether they had been sued in their individual capacities. The pleadings in this case reflect unequivocally that they have been so sued. *See, e.g.,* the plaintiff's May 13, 1983, amended complaint and the defendants' June 1, 1983, answers.

Also, the court recognizes that the license inspector for Montgomery County is paid by the county commission. *See* Note 2, *supra.* However, Parker has not sued the Montgomery County Commission. Thus, any backpay due her may come from only defendant state officials in their official or individual capacities.

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 816–818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The immunity is also available if the persons claiming it can show "extraordinary circumstances and can prove that [they] neither knew nor should have known of the relevant legal standard." 457 U.S. at 818–19, 102 S.Ct. at 2739. The rule of *Elrod* and *Branti*—prohibiting the dismissal of a public employee because of political affiliation except where the affiliation is an appropriate requirement for the effective performance of the employee's duties—was clearly established at the time Parker was discharged from her position as license inspector for Montgomery County. The defendants have also failed to present any extraordinary circumstances to support a conclusion that they neither knew nor should have known of the rule of these two cases. Furthermore, it is apparent from the testimony of the defendants that they were aware that political affiliation was not a necessary or appropriate requirement for the office of license inspector, and yet they discharged Parker for reasons of political affiliation. Under these circumstances, the court finds that the defendants are not entitled to qualified immunity. Backpay for Parker will therefore be imposed against the defendants in their individual capacities.

Finally, Parker seeks attorney fees from the defendants. Since she is the prevailing party, she is entitled to attorney fees under 42 U.S.C.A. § 1988, determined in accordance with the criteria established in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). *See also Blum v. Stenson,* —— U.S. ——, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The court will therefore award her attorney fees.

### IV.

The court recognizes that the *Elrod* and *Branti* decisions of the U.S. Supreme Court have been the object of criticism from some scholars, jurists, and other members of the public. However, this court is not the forum to air such criticisms. Irrespective of the personal opinions of the judge, the lawyers and the parties connected with these proceedings, "fidelity to the concept of ordered liberty under our Constitution requires [this court] to follow *Elrod* and *Branti* as controlling interpretations of First Amendment rights." *McBee v. Jim Hogg County, Texas,* 730 F.2d 1009, 1026 (5th Cir.1984) (en banc) (Tate, J., concurring).

An appropriate judgment will be entered.