Walter J. LANDER

v.

Manuel LUJAN, Secretary, U.S. Department of the Interior, Appellant.

No. 89–5014.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 21, 1989.

Decided Oct. 27, 1989.

Michael J. Ryan, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief for appellant. George P. Williams, Washington, D.C., also entered an appearance for appellant.

Joseph B. Scott, Washington, D.C., for appellee.

Before RUTH BADER GINSBURG, SILBERMAN and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

Concurring statement filed by Circuit Judge RUTH BADER GINSBURG.

SILBERMAN, Circuit Judge:

Appellee Walter Lander, a long time employee of the Bureau of Mines ("BOM"), Department of Interior, had occupied that Bureau's top administrative job, Assistant Director—Administration ("ADA"), since joining the Department in 1967. The ADA

position was classified at a GS–15 pay scale and reported only to the Director of the Bureau. In 1978 the Bureau proposed to upgrade appellee's position to GS–16 and to include it within the Senior Executive Service ("SES"). In December 1978 and March 1979, Lander circulated memos that criticized the Department of Interior's affirmative action plan. Lander, who is white, asserted that the plan unlawfully discriminated against white males. In July 1979 the Bureau altered its reorganization plans and created a new SES position called Management Services Officer ("MSO"), which became the Bureau's top administrative position. Lander was not selected for this position; instead, he was named Chief of the Division of Administration ("CDA"), a job subordinate to the MSO.

Appellee filed suit on December 3, 1985 asserting that the Department had retaliated against him for his expression of views, in violation of section 704(a) of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–3(a) (1982). Section 704(a) prohibits discrimination against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII]." *Id.* The district court concluded that the Department had discriminated against appellee because of his affirmative action plan memos. The court specifically found that the MSO position was the successor to the ADA job and that appellee was entitled to the new position. To remedy the retaliatory demotion, the court ordered, *inter alia,* that appellee be given "the appropriate administrative position within the BOM at the appropriate advanced SES grade." *Memorandum Opinion* at 21 (February 6, 1987). The government at first filed a notice of appeal but later dropped it and therefore is not now appealing from the liability finding.

The Department responded to Judge Penn's order by creating another SES position for appellee—Associate Assistant Director ("AAD")—which was still subordinate to the top administrative position, now called Assistant Director—Finance and Management ("AD–FM"). Mr. Lander then moved to enforce the district court's judgment, arguing that the AAD was a thinly disguised resurrection of the old, discredited CDA position. Appellee claimed that he was entitled to "reinstatement" into the top administrative position at BOM, the AD–FM, even if that remedy required the displacement or "bumping" of the innocent incumbent.[1]

The district court agreed. The court found that, but for the retaliatory demotion, appellee would now occupy the AD–FM position and that the AAD position offered to appellee was not the equivalent of the ADA, the MSO, or the AD–FM. "Reluctantly" and only after carefully "balancing the equities," the court concluded that "absent 'bumping' the plaintiff's relief would be unjustly inadequate." *Memorandum Opinion* at 8 (November 7, 1988). The court then directed the Department to place appellee in the top administrative position at BOM.

The government appeals the district court's November 1988 bumping remedy, asserting, as best we understand its argument, that a court may order bumping, if at all, only as "a last resort," and consequently the district court's order should be reversed. The government contends that the court erroneously balanced the equities as a matter of law because it did not properly weigh the "disruption" of the work place and the impact on an "innocent incumbent." In the alternative, the government argues that the district court's finding that the AD–FM position was the successor to the original ADA job was clearly erroneous, and that even if we approve of bumping, the remedy cannot serve as a judicially required promotion for appellee.

This appeal presents us with an issue of first impression for this Circuit—whether and under what circumstances a district court may order bumping as a remedy for Title VII violations. Reinstatement to a job from which a plaintiff was discriminato-

---

1. The current incumbent, Mr. Fagin, was hired in 1984 and has held his job since January 1985. Thus, the incumbent did not have judicial notice of appellee's claim since he was hired nearly a year before appellee sued the Department.

rily denied need not require the displacement of an incumbent. The necessity for the bumping remedy only arises with unique, typically higher-level, jobs that have no reasonable substitutes. In those situations, the painful choice between the reliance interest of the innocent incumbent and the claims of a victim of discrimination has elicited conflicting responses from the courts of appeals that have visited this problem. *Compare Brewer v. Muscle Shoals Bd. of Educ.*, 790 F.2d 1515 (11th Cir.1986) (authorizing bumping to remedy Title VII violations), *with Spagnuolo v. Whirlpool Corp.*, 717 F.2d 114 (4th Cir. 1983) (holding that the district court abused its authority in requiring bumping). One thread common to a number of circuit court decisions upholding bumping is the emphasis on "recalcitrance" or other bad faith behavior on the employer's part. *See, e.g., Walters v. City of Atlanta*, 803 F.2d 1135, 1149 (11th Cir.1986) ("A defendant's recalcitrance, as evidenced by repeated discriminatory actions after it is on notice of past illegal discrimination against a plaintiff, militates in favor of granting this extraordinary relief."); *Brewer v. Muscle Shoals Bd. of Educ.*, 790 F.2d 1515 (11th Cir.1986) (approving of bumping remedy after school board violated a settlement agreement); *Lee v. Macon County Bd. of Educ.*, 453 F.2d 1104 (5th Cir.1971) (authorizing bumping since school board hired incumbent after it had knowledge of the victim's claims).

■ As in any other remedy, a district court's chosen method of redressing a Title VII violation is reviewable under the abuse of discretion standard. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 424–25, 95 S.Ct. 2362, 2374–75, 45 L.Ed.2d 280 (1975). In light of the considerable discretion which this standard accords to the district courts (and bearing in mind that the impact of bumping on the innocent incumbent is relatively mild on the facts of this case) we see no reason to reverse the district court's choice of remedy, even absent a finding of employer recalcitrance. Moreover, the district court's decision to require bumping in this case accords with the broad guidelines that the Supreme Court has provided on the proper scope of Title VII remedies. District courts must strive to grant "the most complete relief possible" in cases of Title VII violations. *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 764, 96 S.Ct. 1251, 1264, 47 L.Ed.2d 444 (1976). In particular, the courts must make the victim "whole" by " 'plac[ing him], as near as may be, in the situation he would have occupied if the wrong had not been committed.' " *Albemarle Paper Co. v. Moody*, 422 U.S. at 418–19, 95 S.Ct. at 2372 (quoting *Wicker v. Hoppock*, 73 U.S. (6 Wall.) 94, 99, 18 L.Ed. 752 (1867)).

■ Title VII envisioned that making a victim whole would include his reinstatement to the position he would have held but for the discrimination. Section 706(g), 42 U.S.C. § 2000e–5(g), the remedial provision of Title VII, specifically includes reinstatement as an appropriate judicial remedy.[2] On the face of the remedial provisions of the statute, there is no evidence that Congress intended to exclude bumping from the district court's arsenal of available alternatives. Examination of precedent under the counterpart sections of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(c) (1982), on which section 706(g) was "expressly modeled," *see Albemarle Paper Co. v. Moody*, 422 U.S. at 419 & n. 11, 95 S.Ct. at 2372 & n. 11, reveals a legislative intent to include bumping in the district court's remedial arsenal. Under the NLRA, bumping constitutes a clearly authorized and even commonplace remedy. *See, e.g., Mastro Plastics Corp. v. NLRB*, 350 U.S. 270, 278, 76 S.Ct. 349, 355–56, 100 L.Ed. 309 (1956) (upholding the reinstatement of striking workers even when the company had hired replacements); *Oil, Chemical and Atomic Workers Int'l Un-*

---

2. Section 706(g) of Title VII provides in pertinent part:

   If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may ... order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees....

42 U.S.C. § 2000e–5(g).

*ion v. NLRB,* 547 F.2d 575, 588 & n. 14 (D.C.Cir.) (approving NLRB orders to reinstate an illegally discharged employee to his former position or to a substantially equivalent position), *cert. denied sub nom. Angle v. NLRB,* 431 U.S. 966, 97 S.Ct. 2923, 53 L.Ed.2d 1062 (1977). In light of the ready availability of bumping in NLRA cases, we are persuaded that Congress understood and approved of the remedy in Title VII cases where circumstances made it appropriate. *See Lorance v. AT & T Technologies, Inc.,* — U.S. —, 109 S.Ct. 2261, 2267, 104 L.Ed.2d 961 (1989) (observing that NLRA cases are often persuasive in construing Title VII cases). We note also that the Equal Employment Opportunity Commission ("EEOC") views bumping as an appropriate remedy for illegal discrimination.[3] *See Equal Employment Opportunity Comm'n Revisions to Regulations,* 52 Fed.Reg. 41,920, 41,929 (1987).[4] Furthermore, within the civil service system, where displaced incumbents presumably are assured reassignment, bumping is the presumptive remedy for unlawful demotions or discharges. Only if the agency can demonstrate a compelling interest in reassigning rather than reinstating the victim will the Merit Systems Protection Board deny bumping. *See Williams v. Dep't of Health and Human Servs.,* 32 M.S.P.R. 259 (1987); *Mann v. Veterans Admin.,* 29 M.S.P.R. 271 (1985). We are therefore confident that bumping must be thought an appropriate remedy at least in a case of disparate treatment, where the court finds discrimination is explicitly intended.

3. We do not know quite what to make of the divergence between the Justice Department and the EEOC litigating positions on this issue.

4. Under its regulations, the EEOC, after a finding of discrimination, must pursue "full relief," which includes "[a]n unconditional offer to each identified victim of discrimination of placement in the position the person would have occupied but for the discrimination suffered by that person, or a substantially equivalent position." 29 C.F.R. § 1613.271(a)(3).

5. Several circuits have approved similar limitations. *See Romasanta v. United Air Lines, Inc.,* 717 F.2d 1140 (7th Cir.1983), *cert. denied sub nom. McDonald v. United Air Lines, Inc.,* 466 U.S. 944, 104 S.Ct. 1928, 80 L.Ed.2d 474 (1984);

Despite the clear statutory basis for bumping remedies, the government contends that strong prudential reasons counsel against the use of bumping. As we understand the argument, the government's main quarrel is not with the power of the courts to order bumping, but rather the circumstances under which the power is exercised. The government urges us to adopt the view of the Fourth Circuit in *Spagnuolo v. Whirlpool Corp.,* 717 F.2d 114 (4th Cir.1983), which limited the district court's authority to order bumping because of its impact on incumbent workers and the potential disruption of an employer's operations.[5] Instead, the court adopted "the rightful place" theory (an apparent misnomer) whereby a victim of discrimination is entitled to only the next available vacancy. The *Spagnuolo* court found support for that approach in a paragraph of an interpretative memo issued by the sponsors of the Civil Rights Act that seemed to indicate that Title VII did not seek to displace incumbents. *See Spagnuolo,* 717 F.2d at 120.[6]

■ It may well be appropriate, perhaps even required, that a district court consider the impact of a bumping remedy on incumbents who are innocent beneficiaries of the employer's discrimination. This the district court plainly did. But we see no indication in the statute nor in logic to lead us to conclude that ordinarily the innocent beneficiary has a superior equitable claim to the job vis-a-vis the victim of discrimination. Therefore, if the district court must choose between the two, we do not see how the

*Gamble v. Birmingham S.R.R. Co.,* 514 F.2d 678 (5th Cir.1975).

6. We are not persuaded by the Fourth Circuit's rendition of Title VII's legislative history. The Clark–Clifford memo cited by *Spagnuolo* only noted that Title VII would act prospectively and would not disturb seniority rights. Thus, a business discriminating in the past would not have an obligation to fire its all-white workforce and replace it with the past victims. *See* 110 CONG. REC. 7213 (April 8, 1964). Nowhere in the memo do the sponsors indicate an opposition to bumping an incumbent to reinstate the victim of discrimination.

court can be reversed for choosing complete relief for the victim. In any event, the Fourth Circuit's approach seems more suited to a situation where vacancies in the relevant jobs appear rather frequently, but not to a case such as ours where there is really only one top administrative job in the Bureau.

■ Nor do we understand how an employer's claim that his workplace would be disrupted could possibly defeat the victim's entitlement to complete relief when, after all, the employer's intentional discrimination created the disturbance by harming the plaintiff. A district court's discrimination remedy cannot turn on the employer's preferences. The government embroiders that argument here by claiming that the SES structure created by the Civil Service Reform Act of 1978, 5 U.S.C. §§ 3391–97 (1982), was designed to ensure management flexibility in the assignment of those in the SES, and therefore appellee cannot claim an entitlement to a particular job within the SES.[7]

■ We cannot find any indication in the Civil Service Reform Act that Congress intended to insulate the SES from Title VII remedies in the event of discrimination.[8] To be sure, Lander's right to reinstatement to the top administrative job in the Bureau does not mean he has life tenure in the job. He has only the right not to be transferred or disadvantaged for discriminatory reasons. That he could be transferred sometime in the future for a nondiscriminatory reason, however, is not ground to challenge the court's reinstatement order now. Indeed, the flexibility and "rankless" nature of SES positions undermine the government's proposed balance of equities—the incumbent possesses a weaker reliance interest in his current SES position since he may be reassigned at will and at any time.

■ Finally, the government argues that the district court abused its discretion in

ordering bumping because the court made a "critical error" in concluding that the AD–FM position was essentially the same job as the original ADA (prior to 1979) and the interim MSO position. The court had found at the liability stage that the ADA and MSO jobs were essentially the same and that appellee was not promoted to the MSO position because of discrimination. Indeed, the court found, the MSO job was created for the purpose of ousting appellee from the top administrative position. The government, as we noted, did not pursue an appeal of that finding; instead the government now claims that the new AD–FM job differs significantly from the MSO (and thus the prior ADA) position. But neither in its brief nor at oral argument was the government willing to describe these crucial differences. When asked, the government's attorney repeatedly refused to answer except to refer to an ambiguous affidavit from a BOM personnel officer submitted below that equated the MSO position with the AAD position. To suggest that the district court's finding—that the third reincarnation of the top administrative job in the Bureau is essentially the same as the earlier two—was clearly erroneous based upon such a weak showing borders on the frivolous. *See Anderson v. Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (holding that a district court's factfindings must be upheld if "plausible" in light of the entire record).

\* \* \* \* \* \*

We conclude that Title VII clearly authorizes the bumping of innocent incumbents. Furthermore, there was no clear error in the district court's determination that the top administrative position in the BOM was the substantial equivalent of appellee's prior post. Accordingly, the district court did not abuse its discretion in reinstating appellee to the AD–FM position.

*Affirmed.*

---

7. A career appointee in an agency may be "reassigned to any Senior Executive Service position in the same agency for which the appointee is qualified. . . ." 5 U.S.C. § 3395(a)(1)(A).

8. Indeed, one of the dozen "objectives for administering the [Senior Executive] Service" is "assur[ing] faithful adherence to laws relating to equal employment opportunity. . . ." S.Rep No. 95–969, 95th Cong., 2d Sess., *reprinted in* 1978 U.S.Code Cong. & Admin.News 2723, 2791.

RUTH BADER GINSBURG, Circuit Judge, concurring:

While I concur in the court's opinion, I write separately to underscore my view that bumping can be a problematic remedy in Title VII cases, to the extent that someone other than the wrongdoing employer is made to pay for the employer's violation. Unlike an employee hired to replace a striker, a person situated as was the incumbent in this case may lack notice that another lays claim to the job. For that reason, the "rightful place" approach, when it is coupled with a "front pay" award, is sometimes the more appropriate remedy. Under this approach, which has been used routinely for lower- or middle-level jobs, the victim of discrimination receives the next available vacancy or promotion but, while waiting, is paid at the higher level. *See, e.g., Thompson v. Sawyer*, 678 F.2d 257, 293 (D.C.Cir.1982) (approving continuation of front pay remedy "until the wrongs for which the plaintiffs are owed back pay" —the failure to promote female employees in proportion to their numbers in the workforce—"have been righted"); *Wattleton v. Ladish Co.*, 520 F.Supp. 1329, 1350 (E.D. Wis.1981), *aff'd sub nom. Wattleton v. International Bhd. of Boilermakers, Local 1509*, 686 F.2d 586 (7th Cir.1982), *cert. denied*, 459 U.S. 1208, 103 S.Ct. 1199, 75 L.Ed.2d 442 (1983) (awarding front pay to remedy discrimination in union seniority system until discriminatees are able to obtain their "rightful place").

On the facts and circumstances here presented, however, I agree that bumping was fully warranted. As distinct from instances in which the rightful place approach has been most fruitfully applied, this case involves a unique, top-level job, one for which no equivalent vacancy could be projected. Furthermore, the displaced incumbent, Fagin, was not dismissed or discharged; instead, he received a transfer to another senior executive service post. Finally, the district court appropriately considered the posture of the employing agency. The district judge specifically found that "the agency was aware of the dispute [over the MSO position] when it appointed the present incumbent." *Lander v. Hodel*, No. 85–3833, Memorandum Order at 7, 1988 WL 122580 (Nov. 7, 1988). Were bumping not ordered in this situation, an agency could avoid its obligation to provide full "make whole" relief by moving swiftly to fill a vacancy created by its own illegal acts.*

---

* Inexplicably, although the district court entered judgment for Lander on January 30, 1987, and the government withdrew its appeal from that liability-determining, back pay-setting ruling, Lander did not receive the back pay to which he was entitled until the instant appeal was filed and briefed, over two years after the district court's initial judgment.