Pamela P. HICKS, Plaintiff,

v.

DOTHAN CITY BOARD
OF EDUCATION, et
al., Defendants.

Civ. A. No. 92–T–998–S.

United States District Court,
M.D. Alabama, S.D.

Feb. 18, 1993.

Cynthia Williams Clinton, Kenneth Lamar Thomas, Theron Stokes, Alabama Educ. Ass'n, Montgomery, AL, for plaintiff.

Jere C. Segrest, Dothan, AL, for defendants.

## MEMORANDUM OPINION

MYRON H. THOMPSON, Chief Judge.

Plaintiff Pamela P. Hicks, a white female educator in the Dothan City School System, charges that school officials have refused to promote her to various administrative positions because of her sex. She has sued as defendants the school system's board of education, the board members, and the former and current superintendents of education. She bases her lawsuit on the fourteenth amendment to the United States Constitution, as enforced by 42 U.S.C.A. § 1983, and on 42 U.S.C.A. §§ 2000e through 2000e-17, popularly known as Title VII of the Civil Rights Act of 1964, as amended.

Hicks has filed a motion requesting that the court temporarily enjoin the school board from making permanent two recently filled positions for which she had applied. Based upon the record of this case and the evidence presented at a hearing held on February 4, 1993, the court declines to make the two positions temporary or to displace the persons who were appointed to the positions but concludes that other preliminary relief is warranted.

## I. BACKGROUND

Hicks holds a bachelor of science degree in biological science and a master's degree in supervision and administration. She has 19 years of experience in the teaching profession and holds a certificate to teach secondary school and a certificate in supervision and administration. Hicks first taught for six years in two Alabama public schools outside of Dothan. For the next ten years, from 1979–1989, she was a science teacher at Northview High School in the Dothan City School System. For the past three and a half years, since July 1989, Hicks has been a program specialist, which is a supervisory position, in a Dothan middle school.

Hicks seeks a position as a secondary school, as opposed to elementary school, administrator. As of 1992, there were only two females in the school system's high school and middle school administrative positions, which include the positions of principal, assistant principal and administrative assistant. Although there are four female principals in the school system, all four are elementary school principals. Women vastly outnumber men in the school system as a whole: of 685 teachers and administrators, 558 are women (81%) and 127 are men (19%).

Between 1985 and 1992, Hicks applied for every administrative position at the middle school and high school level that became open but she has only been appointed to the supervisory position of program specialist. The relevant events leading up to the motion now before the court may be chronologically summarized as follows:

*1991:* Hicks applied for two positions at Northview High School: assistant principal and administrative assistant. The school board appointed a white male to each position.

*July 1992:* Hicks applied for principal of the Alternative School, which is a school for students with disciplinary problems. The school board appointed a black male.

*August 14, 1992:* Hicks brought this lawsuit claiming that school officials refused to appoint her to three positions—the two 1991 appointments to assistant principal and administrative assistant at Northview High School and the July 1992 appointment to principal of the Alternative School—because of her sex.

*September 1992:* Another assistant principalship became available at Northview High School. Hicks applied but the school board appointed a black male.

*December 10, 1992:* Hicks filed a motion requesting that the court temporarily enjoin the school board from making its last two appointments permanent—that is, the July 1992 appointment of a principal for the Alternative School and the September 1992 appointment of an assistant principal at Northview High School. Although Hicks seeks temporary relief as to the September 1992 appointment, she has not amended her complaint to assert a claim as to this position.

At the hearing on Hicks's motion for temporary relief, the evidence regarding the July 1992 appointment of a principal for the Alternative School and the September 1992 appointment of an assistant principal at Northview High School was as follows. Andrew Fain, the school board's personnel director, was solely responsible for recommending an applicant to the superintendent of education for principal of the Alternative School. Fain considered Hicks, who met the minimum qualifications, but instead recommended Franklin Jones, a black male. The superintendent accepted Fain's recommendation, and the school board approved it and appointed Jones as principal in July 1992. Jones, who has 20 years of experience in the teaching profession, had been a teacher at the Alternative School for nine years and had been an assistant principal at Northview High School for the past four years. As assistant principal, Jones's responsibilities included handling disciplinary problems. According to Fain, Hicks and Jones were equally qualified in the areas of education and certification, and the major reason he recommended Jones was Jones's experience, especially in handling disciplinary problems. Fain admits, however, that one criterion he used in selecting Jones was that Jones is "black and male." He relied on this factor because the majority of the students at the Alternative School are black males, there are very few black male role models in the Dothan school system, and hiring Jones afforded the school board the opportunity to place a black male in the principal position.

After Jones was appointed, his former position as assistant principal at Northview High School became vacant. Hicks timely applied for the position and was considered. In September 1992, however, the school board appointed Willie Brown, a black male. Brown, who has 22 years of experience in the teaching profession, had been a social studies teacher for eleven years in a neighboring county school system, and had been an assistant principal at that county's high school for the past eleven years.

## II. DISCUSSION

Although Hicks styles her motion as one for "temporary" relief, she is actually seeking a "preliminary injunction" pursuant to Rule 65 of the Federal Rules of Civil Procedure, prohibiting the school board from making permanent the July 1992 appointment of Jones as principal for the Alternative School and the September 1992 appointment of Brown as an assistant principal at Northview High School. The Eleventh Circuit Court of Appeals has established a four-prong test for determining whether a preliminary injunction should issue. Under this test, the movant must show: "(1) a substantial likelihood that she will ultimately prevail on the merits; (2) that she will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; *and* (4) that if issued, the injunction would not be adverse to the public interest." *Baker v. Buckeye Cellulose Corp.,* 856 F.2d 167, 169 (11th Cir. 1988) (emphasis in original).

### A. Likelihood of Success

#### 1. The Alternative School Principalship

■ Title VII, as amended in 1991, provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C.A. § 2000e–2(m). The Act further provides:

"On a claim in which an individual proves a violation under section 2000e–2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court—

(i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e–2(m) of this title; and

(ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A)."

§ 2000e–5(g)(2)(B). Title VII therefore provides that, if an employee shows that race or sex or some other impermissible factor was a motivating factor for an adverse employment action, the employer may still be liable for discrimination and subject to partial relief even though the employer can prove that the same action would have been taken in the absence of any such motive.

■ Hicks has presented evidence sufficient to show that an illegitimate criterion was a motivating factor in the school board's selection of Jones over her for the principalship at the Alternative School. Fain admits that one criterion in recommending Jones was that Jones was "black and male" and that having a black male role model was desired. Although Fain stated that this criterion was not the major reason for recommending Jones, the court preliminarily finds that the criterion was a motivating factor in Fain's decision. Hicks's sex thus played, at least, a motivating role in the school board's rejection of her. The school board argues that having a black male role model would be beneficial for black male students. At this stage of the litigation, however, the school board has made no showing that such conscious, albeit perhaps benign, discrimination is permissible under Title VII and the fourteenth amendment. Indeed, for example, the Supreme Court has held that a perceived need for "minority role models" does not justify a school board's policy of extending to black teachers a preferential protection against layoffs. *Wygant v. Jackson Board of Educ.*, 476 U.S. 267, 274–76, 106 S.Ct. 1842, 1847–48, 90 L.Ed.2d 260 (1986) (plurality opinion by Powell, J., joined by Burger, Rehnquist, and O'Connor, JJ.); *id.* at 294, 106 S.Ct. at 1858 (White, J., concurring in judgment). There is therefore a substantial likelihood that the court will find the school board liable under Title VII.

■ The school board argues that it would have chosen Jones as principal of the Alternative School even had it not used the need for a black male role model as a criterion. Title VII provides that the employer may "demonstrate" that it "would have taken the same action in the absence of the impermissible motivating factor." 42 U.S.C.A. § 2000e–

5(g)(2)(B). However, such demonstration goes not to an employer's liability but rather to the available relief. If the employer demonstrates that it would have taken the same action, the court could not order the employer to reinstate, hire or promote the complaining employee but could order other declaratory and injunctive relief. *Id.* This distinction is critical here because, if the school board can show that there is a substantial likelihood that it would have chosen Jones as principal of the Alternative School even had it not used the need for a black male role model as a criterion, then there would be a corresponding substantial likelihood that Hicks would not be entitled to a court-ordered promotion and thus no need to displace Jones. The court preliminarily finds that the school board has not met this burden.

The school board argues that the major reason Fain recommended Jones was Jones's experience, especially in handling disciplinary problems. Fain stated, however, that Hicks and Jones were equally qualified in the areas of education and certification. Fain also conceded that, as a teacher, Hicks has had experience in dealing with disciplinary problems. Moreover, as a program specialist, Hicks investigates disciplinary problems and works with students who are having disciplinary problems and with their parents. Thus, the overall qualifications of Jones and Hicks are arguably comparable. In addition, Fain's comments concerning the need for an administrator experienced in handling disciplinary problems could be interpreted as indicating that the school board believes women are not capable, or at least not as capable, as men in dealing with disciplinary matters. *See Tye v. Houston County Board of Educ.*, 681 F.Supp. 740, 745 (M.D.Ala.1987) (Thompson, J.) (school board refused to appoint woman to administrative position because superintendent believed "handling discipline might be too much for a woman"). This conclusion is reinforced by the school board's failure to appoint any women to a high school assistant principal or administrative assistant position which carried a primary responsibility for disciplinary matters. The court therefore finds that there is a substantial likelihood that the school board will not succeed in rebutting the evidence of sex discrimination

and that Hicks will ultimately prevail on her claim as to the principalship at the Alternative School.[1]

### 2. The Assistant Principalship

The court does not reach Hicks's claim as to the assistant principal position at Northview High School. Because Hicks does not seek relief as to this position in her complaint, the position is not a part of this litigation.

### B. Irreparable Harm

▇ Although the court will presume irreparable harm in a Title VII case in which the employee has exhausted her administrative remedies, the presumption does not apply when those remedies have not been exhausted. *United States v. Jefferson County*, 720 F.2d 1511, 1520 (11th Cir.1983). Hicks has filed an administrative claim with the Equal Employment Opportunity Commission, charging that the Dothan City School Board refused to appoint her as principal of the Alternative School because of her sex. However, because the Commission has not yet made any findings or issued a right-to-sue letter on this claim, Hicks concedes that she is not entitled to the presumption and must show that she will suffer irreparable harm.

▇ Hicks contends that, because secondary school administrative positions become available only once every few years, she will be forced to remain in her current position

for a number of years should she prevail on the merits and, in addition, will have lost valuable experience should she subsequently apply for another promotion.

The school board has provided information concerning the number of vacancies in the school system over the last seven years, although all of these numbers do not differentiate between elementary and secondary schools nor do they give year-by-year data. The following positions have been filled over the last seven years: ten assistant principal or administrative assistant positions, one middle school principal position, four supervisor positions, two Alternative School administrative positions, and seven elementary school principal positions. In the last three and a half years, eleven administrative positions have been filled, though this number includes elementary school principal positions. In addition, the principal of Hicks's middle school has been in that position for 38 years, and the school board has suggested that he may retire shortly but has given no definite dates. None of the school system's administrators, however, has given any indication that he or she will leave at the end of this school year, although administrators do not usually give notice of retirement until after the spring holidays in April.

These data suggest that, although the positions which Hicks seeks do not become available on any regular yearly basis, there is a substantial likelihood that a position acceptable to Hicks will become available within the

---

1. The statistics submitted by the parties also reinforce—or at least do not undermine—the likelihood that Hicks will prevail. There are only two females in the school system's high school and middle school administrative positions (which include the positions of principal, assistant principal and administrative assistant), and the school system's four female principals are all in the elementary schools. Nevertheless, of 685 teachers and administrators, 558 are women (81%) and 127 are men (19%). Admittedly, these statistics are limited and incomplete—for example, the following numbers are not supplied: the total number of teachers and administrators in the secondary schools, the number of female teachers and administrators in the secondary schools, and the number of female applicants to secondary school administrative positions. However, as this court noted when similarly confronted with limited but suggestive statistics on a motion for preliminary injunction in another case,

"On a request for preliminary injunctive relief the burden on a plaintiff is not to show with certainty that he or she will prevail on the merits, but to show that there is a substantial likelihood that he or she will prevail.... On a request for preliminary injunctive relief a court, therefore, deals generally in a 'calculus of probabilities.'"

*York v. Alabama State Board of Educ.*, 581 F.Supp. 779, 786 (M.D.Ala.1983) (Thompson, J.), quoting *Dallas Cowboy Cheerleaders v. Scoreboard Posters, Inc.*, 600 F.2d 1184, 1188 (5th Cir.1979); *see also Productos Carnic, S.A. v. Central American Beef and Seafood Trading Company*, 621 F.2d 683 (5th Cir.1980). With these principles in mind, the court concludes that Hicks has established that there is a substantial likelihood that the trial evidence will reveal statistics supportive of her claim that she has been a victim of sex discrimination.

next two years. While two years is not a short time, it is a short enough period that, should Hicks prevail in her suit, she will be able to obtain an acceptable position in the near future. Nevertheless, because only one position may become available within that two-year period, Hicks will certainly face irreparable harm if she does not obtain immediate preliminary relief to ensure that she will be able to obtain any position that does become available.[2]

### C. What Type of Preliminary Relief Is Appropriate

■ Having determined that Hicks is substantially likely to prevail on the merits and that she will likely face irreparable harm, the court must now turn to the issue of what type of preliminary relief is appropriate in light of the threatened irreparable harm to Hicks and the interest of the Dothan City Board of Education in the orderly management of its school system. Hicks requests that the court temporarily enjoin the school board from making permanent the position obtained by Jones, that of principal of the Alternative School. According to Hicks, the position must be made temporary because, if Hicks ultimately prevails in proving that she, rather than Jones, should have been promoted to principal, she will request that she be immediately appointed to the position. For two reasons, the court rejects Hicks's request that the school board be temporarily enjoined from making Jones's position permanent.

#### 1. Displacement

First, enjoining the school board from making Jones's position permanent would be necessary only if Jones's displacement would be an appropriate remedy should Hicks ultimately prevail. The court does not believe, however, that Jones's displacement would be appropriate should Hicks prevail.

■ A district court has "broad, equitable discretion to grant any equitable relief it deems appropriate to make persons whole for injuries suffered on account of unlawful employment discrimination." *Rivers v. Washington County Board of Educ.*, 770 F.2d 1010, 1012 (11th Cir.1985). This discretion includes the authority to displace or "bump" an incumbent employee from a position in order to place a successful plaintiff in that position. *Walters v. City of Atlanta*, 803 F.2d 1135, 1148–49 (11th Cir.1986); *Brewer v. Muscle Shoals Board of Educ.*, 790 F.2d 1515, 1522–23 (11th Cir.1986); *see also Lander v. Lujan*, 888 F.2d 153, 156–57 (D.C.Cir. 1989) (explaining statutory basis for bumping). In exercising this discretion, a district court should be guided by the notion that "bumping can be a problematic remedy in Title VII cases, to the extent that someone other than the wrongdoing employer is made to pay for the employer's violation." *Lander*, 888 F.2d at 159 (R.B. Ginsburg, J., concurring). Displacement should, therefore, "be used sparingly and only when a careful balancing of the equities indicates that absent 'bumping,' plaintiff's relief will be unjustly inadequate." *Walters*, 803 F.2d at 1149.

■ From a review of existing caselaw the court has distilled a number of factors it may consider in determining whether bumping is appropriate: (1) effect on the plaintiff of the refusal to displace; (2) culpability of the incumbent; (3) disruption to the incumbent; (4) degree of culpability of the employer; (5) uniqueness of position and availability of comparable positions; (6) the plaintiff's diligence in taking steps to assure that the position remains available should the plaintiff prevail; and (7) undue disruption of the employer's business. No one of these factors is necessarily determinative, and, indeed, not all of the factors will always be relevant. These are instead some of the major factors a court may consider in deciding whether to

---

2. Hicks points to the experience of an educator in another discrimination suit in which the school board agreed in January 1989 to give him "priority consideration" for the next available high school principalship in the school system. He has now waited four years and no position has become available. Although this situation has some bearing on an irreparable harm determination here, it is difficult to compare the position of high school principal, of which there are only two in the Dothan school system, to that of the other secondary school administrative positions, of which there are approximately 15 or more.

bump an incumbent in order to provide full relief to a successful plaintiff.

**■** *Effect on the plaintiff of the refusal to displace.* If the plaintiff is entitled to instatement because of an illegal discharge or refusal to hire and if the plaintiff cannot obtain a reasonably comparable job elsewhere, the reasons for bumping would be compelling, especially if bumping is the only way the plaintiff can secure a job; backpay and front pay alone might not adequately compensate for the complete loss of an opportunity to pursue one's profession. On the other hand, if the plaintiff is a victim of only an illegal denial of a promotion, the reasons for bumping may be less compelling. The plaintiff might still be able to pursue her profession, albeit not at the level sought, pending the availability of a comparable position.

*Culpability of incumbent.* If the incumbent was involved in the wrongful act leading to his appointment over the plaintiff, the incumbent would be aware that he should not have been appointed in the first place and, more importantly, should not be rewarded for his wrongdoing. On the other hand, although the incumbent may be a direct beneficiary of the wrongful act and, but for the wrongful act, would not have received the position, he may still be an unknowing and innocent beneficiary. In addressing this latter circumstance, a court should "bear in mind that a poorly crafted remedy may achieve justice for one by working a substantial injustice on another." *Walters,* 803 F.2d at 1149. *See also Parker v. Wallace,* 596 F.Supp. 739, 746 (M.D.Ala.1984) (Thompson, J.) (court refused to bump because incumbent was innocent party).

*Disruption to the incumbent.* The incumbent's concerns should also be considered: whether the incumbent has held the position for a substantial period of time and has, in unwitting reliance on the appointment, rearranged his business and personal affairs, or whether the incumbent has not yet begun working or has been on the job only a very short time; whether the employer is in a position "to minimize the harm suffered by the 'bumped' employee," *see Walters,* 803 F.2d at 1150 (the employer offered the in-

cumbent a lateral move if she were bumped); and whether the incumbent knew or should have known that the position was subject to a prior claim because, for example, the employer has breached a settlement agreement, *see Brewer,* 790 F.2d at 1522–23, or ignored a court order concerning the plaintiff's entitlement to a position. *See United States v. City of Montgomery,* 788 F.Supp. 1563, 1570–71 (M.D.Ala.1992) (Thompson, J.).

*Degree of culpability of the employer.* Even assuming that the incumbent was completely innocent and ignorant of the employer's wrongdoing, it may still be appropriate to displace the incumbent where there is evidence of "the defendants' repeated instances of racial discrimination against plaintiff." *Walters,* 803 F.2d at 1150. "A defendants' recalcitrance, as evidenced by repeated discriminatory actions after it is on notice of past illegal discrimination against a plaintiff, militates in favor of granting this extraordinary relief." *Id.* at 1149.

*Uniqueness of the position and the availability of comparable positions.* Displacement may not be necessary if the targeted position or a comparable position will become available shortly. On the other hand, if the position is unique and will not be vacated within a reasonable time, then displacement may be necessary if the plaintiff is ever to be made whole. *See Walters,* 803 F.2d at 1149–50.

*The plaintiff's diligence in preserving her right to the targeted the position.* If the plaintiff does not give notice as soon as is reasonably possible of her claim to a position and has not taken reasonable steps to preserve the position, but has instead allowed her employer (without notice of the plaintiff's claim) to fill the position with someone else (who is also unaware of the plaintiff's claim), then the plaintiff's own dereliction would militate against bumping the incumbent. In the converse situation, however, where the plaintiff has taken all necessary and reasonable steps to give notice of her claim and to preserve the vacancy, the employer and its other employees would be on notice that the plaintiff had a substantial claim to the position, *Walters,* 803 F.2d at 1149, n. 12, and would be less able to claim entitlement to the

position should the plaintiff prevail and seek to displace the incumbent. Under the current state of the law, a plaintiff may seek preliminary relief to preserve the availability of a position even before the Equal Employment Opportunity Commission has issued a right-to-sue letter and while her administrative claim is still pending before the Commission, *Drew v. Liberty Mutual Insur. Co.*, 480 F.2d 69, 72–75 (5th Cir.1973); and, of course, such relief may be sought at the time a lawsuit is filed and any time thereafter.[3]

*Undue disruption of the employer's business.* An employer's claim of workplace disruption cannot, as a general rule, "possibly defeat the victim's entitlement to complete relief when, after all, the employer's intentional discrimination created the disturbance by harming the plaintiff." *Lander,* 888 F.2d at 158. Nevertheless, there may be unusual circumstances that warrant an exception to this rule.

Applying these factors, the court finds that displacement is not an appropriate remedy. First, at issue is a promotion. Without immediate displacement of Jones, Hicks will still be able, for the most part, to pursue her profession. Second, the court is asked to choose between two innocent parties. Jones played no improper part in the decision to appoint him as principal of the Alternative School. Third, Jones was appointed to the position in July 1992, approximately six months ago. However, neither before nor immediately after she filed suit in August did Hicks seek preliminary relief to prevent Jones from assuming his duties at the beginning of the next school year. She instead waited until December to file a request to have the court enjoin the school board from making the position permanent. Hicks therefore allowed Jones to occupy and settle into the position. Fourth, because Jones left his job as assistant principal at Northview High School to take the principalship at the Alternative School Principal, bumping him could require that the person who replaced him also be bumped. Finally, it appears that comparable positions in the school system

will likely become available in the near future. Hicks seeks any secondary school administrative position; the principalship at the Alternative School principal is not her sole employment goal. Weighing these factors, the court finds that the unfairness to Jones by bumping him is not outweighed by the inadequacy of an alternate remedy for Hicks. The court, therefore, declines to make Jones's position as principal of the Alternative School temporary as the court would not later order Jones to be displaced by Hicks.

### 2. An Alternative Remedy

There is a second and more compelling reason to reject Hicks's request that the court temporarily enjoin the school board from making Jones's position permanent. The court has at its disposal another remedy which will meet Hicks's concerns without trampling on the interests of other school employees. Because vacancies in secondary school administrative positions likely occur at least once every two years, an assurance that she would receive the next available position would be meaningful. Accordingly, the court will prohibit the school board from filling any secondary school or Alternative School administrative position (other than principal of either of the two high schools) without first obtaining permission from the court. In addition, Hicks has informed the court that, if an elementary school principal position were to become available before a secondary school administrative post, she would take the position as principal on an interim basis until a secondary school position became available. Therefore, the court will also prohibit the school board from filling any elementary school principal position without first obtaining permission from the court. This preliminary relief will ensure that Hicks will be considered for any positions that become available without interfering with the rights of other school system employees.

In addition, the burden of this relief on the school board should be only minor. First, because only one or two positions will become vacant in the next two years, the injunction will in turn apply to only one or two

---

**3.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit Court of Appeals handed down prior to the close of business on September 30, 1981.

positions. Second, should a vacancy occur before there is a final decision in this case and should the school board desire to fill it with someone other than Hicks, the court would have several options to meet the school system's needs, the most of obvious of which would be to allow the position to be filled on an interim basis but with the person appointed made fully aware that his or her appointment is temporary only. In addition, if the circumstances warrant, the court could also still allow the school board to fill a position on a permanent basis.

### D. Public Interest

The proposed relief serves the public interest by ensuring that the provisions of Title VII proscribing discrimination and granting meaningful remedies will be faithfully enforced as envisioned by Congress. In addition, the relief helps to ensure that, if Hicks prevails, the students who attend the Dothan public schools will have the benefit of the most able administrators, regardless of their sex.

An appropriate order will be entered.

DONE, this the 18th day of February, 1993.

### ORDER AND PRELIMINARY INJUNCTION

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of the court:

(1) That the motion for a temporary injunction filed by plaintiff Pamela P. Hicks on December 10, 1992, be and it is hereby granted in part and denied in part; and

(2) That the defendants—the Dothan City Board of Education, the board members, and the current superintendent of education—and their officers, agents, servants, employees, and those persons in active concert or participation with them who receive actual notice of this order, are each preliminarily ENJOINED and RESTRAINED from filling any secondary school or alternative school administrative position (other than principal of either of the two high schools) or any elementary school principal position

without first obtaining permission from the court.

The clerk of the court is DIRECTED to issue a writ of injunction.