**John B. HAYES, Plaintiff,**

v.

**Donna SHALALA, Defendant.**

**Civil Action Nos. 93–1504, 94–1645, and 95–1334 (PLF).**

United States District Court, District of Columbia.

July 12, 1996.

---

David Shapiro, Swick & Shapiro, Washington, DC, for plaintiff.

Stacy M. Ludwig, Assistant United States Attorney, Washington, DC, for defendant.

## OPINION

PAUL L. FRIEDMAN, District Judge.

After a trial before a jury over a seven-day period beginning on November 29, 1995, the jury returned a verdict in favor of plaintiff John Blair Hayes, finding by a preponderance of the evidence that (1) he was denied a promotion to a position for which he was qualified by virtue of the defendant's intentional discrimination against him because of his race; (2) that he was denied a promotion to a position for which he was qualified because of the defendant's intentional retalia-

tion against him because of his prior EEO activity; and (3) that thereafter the person who was appointed to the job for which he had applied, Barbara Twombly, intentionally retaliated against him because of his prior EEO complaint regarding his non-selection for the position. The jury awarded plaintiff $50,000 on each of these three claims, and the Court entered judgment on the verdict for plaintiff in the amount of $150,000, together with costs.

The matter is now before the Court on plaintiff's motion for an award of equitable relief and attorneys' fees. Plaintiff argues that in addition to the compensatory damages awarded by the jury, Title VII requires the Court to provide plaintiff with the following equitable relief: (1) retroactive appointment to the position of Director of the Division of Acquisition Management; (2) retroactive promotion to the GS–15 level at an appropriate step within that grade; (3) full back pay (with interest) and other benefits; (4) recrediting of both annual leave and sick leave, amounting to approximately 850 hours; (5) back pay for a week of leave without pay (with interest); (6) an injunction prohibiting the Department of Health and Human Services from discriminating against plaintiff because of his race and from retaliating against him because of his successful litigation in this matter; (7) an award of the costs of bringing these actions and the related administrative claims, including reasonable attorneys' fees; and (8) an order directing the defendant to correct its records to reflect the jury's verdict and the equitable relief provided by the Court.

## DISCUSSION

Title VII entitles individuals to be "[made] whole for injuries suffered on account of unlawful employment discrimination." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975). In order to effectuate this purpose, "Congress took care to arm the courts with full equitable powers" so that the injured party may be "placed, as near as may be, in the situation he [or she] would have occupied if the wrong had not been committed." *Id.* at 418–19, 95 S.Ct. at 2372–73; *see*

Lander v. Lujan, 888 F.2d 153, 156 (D.C.Cir. 1989). The district court has "considerable discretion" in choosing the method or methods of redress, *Lander v. Lujan*, 888 F.2d at 156; *see McKenzie v. Sawyer*, 684 F.2d 62, 75 (D.C.Cir.1982), although this discretion is to be exercised "in light of the large objectives of [Title VII]." *Albemarle Paper Co. v. Moody*, 422 U.S. at 416, 95 S.Ct. at 2371.

## A. Retroactive Appointment, Promotion and Back Pay

Plaintiff seeks appointment as Director of the Division of Acquisition Management, the position for which the jury found that he was qualified but was denied appointment because of intentional discrimination on the basis of race and because of intentional retaliation against him because of his prior EEO activity. As plaintiff points out, the Special Verdict Form demonstrates that the jury expressly and specifically concluded that plaintiff would have been selected as Director of the Division of Acquisition Management absent such racial discrimination and reprisal.

The government argues against this form of equitable relief. It maintains that to make plaintiff the head of the Division would be "severely detrimental" and would undermine the ability of the Division to operate effectively because of the "already unfortunate relationship plaintiff has established with his colleagues." The government maintains that "given plaintiff's disrespectful and uncooperative attitude, his placement in this position would seriously undermine the Division's morale and potentially paralyze its ability to operate." Plaintiff responds that any evidence concerning Mr. Hayes' disrespectful and uncooperative attitude and his potential to create a morale problem should be disregarded because the jury disbelieved the witnesses who testified about plaintiff's shortcomings and uncooperative attitude.

■ "Title VII envisioned that making a victim whole would include his reinstatement

to the position he would have held but for the discrimination." *Lander v. Lujan*, 888 F.2d at 156. 42 U.S.C. § 2000e–5(g) specifically includes reinstatement as an appropriate judicial remedy; indeed, "reinstatement is the preferred remedy in the absence of special circumstances militating against it." *Squires v. Bonser*, 54 F.3d 168, 173 (3d Cir.1995). Although there is evidence of prior antagonism between plaintiff and the individuals with whom he would have to work, defendant may not justify denying plaintiff the promotion based on hostility engendered by the employer's own acts of discrimination or by this litigation itself. *See Lander v. Lujan*, 888 F.2d at 158.[1] Since the jury concluded that plaintiff was qualified for and should have been selected for the job and that he was denied it only because of illegal discrimination and retaliation, plaintiff should not be further penalized for the workplace discord that may have arisen from defendant's own discriminatory activity. The Court must assume that, if awarded the job, plaintiff will carry out his responsibilities professionally and without rancor and that plaintiff and defendant alike will actively seek to promote and sustain the sort of respectful workplace relationships envisioned by Title VII itself.

■ As for the fact that retroactively appointing plaintiff to the position of Division Director would "bump" Barbara Twombly, who currently is "acting" in that position, the District of Columbia Circuit has indicated that bumping is authorized and appropriate in precisely the kind of situation presented by this case. *Lander v. Lujan*, 888 F.2d at 156–58. For these reasons, the Court will order the retroactive appointment of plaintiff to the position of Director of the Division of Acquisition Management.

■ The parties agree that, in light of the jury's verdict, the plaintiff is entitled to retroactive promotion to a GS–15 Level, Step 6. They differ only as to whether he should be promoted to that level as of June 10, 1992, the date on which Robert Stovenour, the

---

1. Several witnesses testified about plaintiff's conduct and attitude. One white employee testified that he called her "white trash," and two African–American employees testified about his disrespectful and condescending attitude toward them; one said that she and another African–American employee were so offended by plaintiff's racist comments that on one occasion they left the work area.

recommending official, formally recommended Barbara Twombly for the position of Division Director, or as of August 9, 1992, the beginning of the first pay period after Laurence Love, the selecting official, approved the recommendation of Ms. Twombly by Mr. Stovenour. Based on the representations of the government and the declaration of Sylvia Vela, dated March 12, 1996, the Court concludes that plaintiff is entitled to retroactive promotion to the GS–15 Level, Step 6, as of August 9, 1992, not as of June 10, 1992.

■ The parties also are in agreement that, in view of the jury's verdict, plaintiff is entitled to back pay and other benefits, with interest, for the pay differential between what he earned as a GS–14, Step 10, and a GS–15, Step 6, and that he should receive the appropriate bonuses and step increases, if any, attendant with the promotion to Division Director. The only point of disagreement is whether plaintiff's benefits should be calculated based on the assumption that he would have performed at the "outstanding" level as Division Director or only at a "fully successful" level, his most recent performance rating. Because plaintiff has never been a Division Director, there is no direct evidence about how plaintiff would have performed in that position. There is evidence, however, that his most recent performance evaluation was only a "fully successful" rating, and plaintiff testified at trial that he did not contest this rating. Based on the trial testimony, the Court concludes that it would be more appropriate to calculate plaintiff's back pay and other benefits as if plaintiff had received a "fully successful" rating rather than an "outstanding" rating. Thus, the back pay and benefits shall be calculated as if he had received a "fully successful" rating from August 10, 1992 until the present time.

### B. Recrediting Annual Leave and Sick Leave

Plaintiff argues that Mr. Hayes was forced to use both sick leave and annual leave "to get treatment and to maintain his equilibrium" because of the "retaliatory campaign" waged against him by Barbara Twombly. He maintains that he was forced to use 405.5

hours of sick leave and 447.8 hours of annual leave between March of 1993, when the "retaliatory campaign against him seems to have started," and the trial of this case that began on November 29, 1995. He also argues that because of this retaliatory treatment he was "forced to conserve what little leave he had left" and thus took 40 hours of leave without pay in order to take his sons on vacation. He therefore seeks payment for this week of leave without pay, in addition to the re-crediting of annual and sick leave. All of these requests are premised on the jury having found by a preponderance of the evidence that Barbara Twombly intentionally retaliated against plaintiff because of his EEO complaint regarding his non-selection for the Division Director position.

■ The jury found that Ms. Twombly's retaliatory actions caused Mr. Hayes to suffer "emotional pain, suffering, inconvenience, mental anguish, or loss of enjoyment of life so as to entitle him to monetary compensation over and above back pay" and awarded him $50,000 in compensation. The jury also compensated plaintiff for the humiliation, emotional pain and suffering, inconvenience and mental anguish that he suffered by virtue of the discrimination and retaliation that led to his non-selection for the position of Division Director. This jury award of $150,-000 more than compensates and makes plaintiff whole for these emotional injuries. The fact that he allegedly had to take leave to visit his psychotherapist and to otherwise absent himself from the workplace because of the work environment which he found intolerable necessarily was considered by the jury as evidence in support of his claim for compensatory damages and therefore is encompassed by the jury's verdict. *See Shaw v. Nebraska Department of Correctional Services*, 666 F.Supp. 1330, 1339 (D.Neb.1987).

It is clear from the legislative history of the Civil Rights Act of 1991, which provided for compensatory damages under Title VII for the first time, that the sort of recovery for emotional distress sought by plaintiff is not available as a form of equitable relief, since before 1991 it was not available under Title VII at all. In explaining why Congress

added compensatory damages, the House Report reasoned that

> [v]ictims of intentional ... discrimination ... often endure terrible humiliation, pain and suffering. This distress often manifests itself in emotional disorders and medical problems. [Yet without compensatory damages] [v]ictims of discrimination often suffer substantial out-of-pocket expenses as a result of the discrimination, none of which is compensable with equitable remedies. The limitation of relief under Title VII to equitable remedies often means that victims of intentional discrimination may not recover for the very real effects of the discrimination.

H.R.REP. No. 102–40, 102d Cong., 1st Sess. 2 pt. 2, at 25 (1991), U.S.Code Cong. & Admin.News 1991 at 694, 718.

■■■ Moreover, equitable relief is not automatic and the Court must assess the appropriateness of the equitable relief sought in light of the injuries found.[2] Where the jury has not actually decided an issue or where the basis for the jury's decision cannot be determined, the court is not bound. *Blake v. Hall,* 668 F.2d 52, 54 (1st Cir.1981), *cert. denied,* 456 U.S. 983, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982). Here, the jury expressly found that Ms. Twombly refused to allow plaintiff to accrue and use credit hours to work out at the gym during an extended lunch hour every day and in so doing unlawfully retaliated against him. The government has conceded that plaintiff is entitled to 44.5 hours of annual leave for this time.[3] The jury also expressly found that Ms. Twombly retaliated against plaintiff by charging him with one hour of Absent Without Leave (AWOL); plaintiff therefore is entitled to recover this hour.

■■■ The jury's other findings, however, do not demonstrate that plaintiff is entitled to be credited with the large amount of leave

he took allegedly to improve his mental health. The jury found that Ms. Twombly retaliated against plaintiff by rating him only at the "fully successful" level, by requiring him to submit a work plan before she would approve his annual leave, by denying his request for annual leave, by investigating a complaint against him, by reprimanding him and by verbally abusing him. These actions have, at best, a highly attenuated connection to plaintiff's decision to take over 850 hours of sick leave and annual leave. Plaintiff's unilateral decision to absent himself from the workplace does not entitle him to the equitable relief he seeks either in the Court's view or, so far as can be discerned, in the jury's. For these same reasons, the 40 hours of leave that plaintiff took without pay is also not compensable because plaintiff has failed to demonstrate, and the jury did not find, that his leave taking resulted from defendant's unlawful conduct.

## C. Injunction Prohibiting Discrimination and Retaliation and Correction of Records

■■■ An injunction prohibiting discrimination and retaliation in this case is both unnecessary and inappropriate. The jury verdict is sufficient in and of itself to protect plaintiff against future acts of discrimination and retaliation. The Court will not presume that the Secretary of Health and Human Services and her employees will not follow the law and plaintiff has not demonstrated that future violations are likely. *See E.E.O.C. v. General Lines, Inc.,* 865 F.2d 1555, 1565 (10th Cir. 1989). No injunction will be issued.

■■■ Regarding the request for correction of records, the Court will order that Mr. Hayes' personnel folder and other relevant Department records be corrected to reflect the jury's verdict and the equitable relief provided by the Court.

2. The Court notes that the evidence of retaliatory motive in this case was thin enough to suggest that no reasonable jury could have concluded that plaintiff was retaliated against because of his previous EEO complaint regarding his non-selection for the Division Director position. *See Hayman v. National Academy of Sciences,* 23 F.3d 535, 537 (D.C.Cir.1994). Since defendant has

not moved for judgment as a matter of law, however, the Court does not reach the issue.

3. Ms. Twombly testified that she informed plaintiff that he could take compensatory time to work out at the gym on a daily basis; plaintiff testified that he chose to use annual leave rather than use compensatory time for this purpose.

### D. Attorneys' Fees and Costs ·

■ As the prevailing party in this Title VII case, plaintiff is entitled to reasonable attorneys' fees and costs. 42 U.S.C. § 2000e–5(k); *see Moore v. National Association of Securities Dealers, Inc.,* 762 F.2d 1093, 1097–98 (D.C.Cir.1985). The Court has reviewed defendant's request, including counsel's sworn declaration and the detailed billing records provided, as well as the government's arguments, to determine whether the hours spent and the hourly rates are reasonable. *Copeland v. Marshall,* 641 F.2d 880, 889 (D.C.Cir.1980); *see Evans v. Sheraton Park Hotel,* 503 F.2d 177 (D.C.Cir.1974).

■ For the reasons stated by plaintiff's counsel, the Court will not disallow those few hours relating to Civil Action No. 95–1334, a case previously dismissed by the Court. As for the cases that went to trial, the Court finds that the time spent by plaintiff's counsel throughout the pretrial period, including the time spent in depositions and other discovery, was entirely reasonable. The Court also finds that the time spent in preparation for trial and during trial (sometimes as much as 18 to 20 hours a day), while quite substantial, was not unreasonable in view of the number of witnesses and the need to prepare each evening during trial for the next day's events. While counsels' hourly rates appear reasonable by comparison to the prevailing market rates of other attorneys of comparable experience, skill and reputation, *Blum v. Stenson,* 465 U.S. 886, 895–96 n. 11, 104 S.Ct. 1541, 1547–48 n. 11, 79 L.Ed.2d 891 (1984), the Court does not find it appropriate to charge all the time at counsels' current rates (rather than at counsels' historic rates which changed over the relevant period) merely because of the passage of time between the time services were provided and the date of

payment; that is not the typical practice in the law firm world.

■ Thus, counsel is entitled to $183,-805.00 for the time spent by David H. Shapiro, $7,015.00 for the time spent by Richard L. Swick, and $15,427.50 for the time spent by Diane Bodner, for a total of $206,247.50. The costs and expenses incurred by counsel, in the amount of $4,219.06, are also reasonable.[4] Counsel therefore is entitled to a total of $210,466.56 in fees and costs.[5] An Order consistent with this Opinion is entered this same day.

SO ORDERED.

### ORDER

This case is before the Court on plaintiff's Application for An Award of Equitable Relief Including Costs and Attorneys' Fees. For the reasons stated in the Opinion entered this same day, it is hereby

ORDERED that plaintiff's motion for equitable relief and attorneys' fees is GRANTED in part and DENIED in part; and it is

FURTHER ORDERED as follows:

1. Plaintiff shall be appointed to the position of Director of the Division of Acquisition Management retroactive to August 9, 1992;

2. Plaintiff shall be promoted to the GS–15/Step 6 pay level retroactive to August 9, 1992;

3. In addition to paying plaintiff $150,000 in compensatory damages awarded by the jury on December 8, 1995, defendant shall provide plaintiff with full back pay, with interest thereon, and all other benefits retroactive to August 9, 1992, with all bonuses to be paid and all quality step increases provided to plaintiff as if his performance since

---

4. Plaintiff himself is entitled to reimbursement for taxi fares and parking incurred directly as a result of this litigation in the amount of $236.00, but he has not shown any connection between his medical expenses (above insurance) and this litigation and he therefore is not entitled to reimbursement for them. *See Polacco v. Curators of University of Missouri,* 37 F.3d 366, 370 (8th Cir.1994); *Planells v. Howard University,* 34 Fair. Empl.Prac.Cas. (BNA) 66, 1984 WL 1080, *5 (D.D.C.1984).

5. This decision assumes that counsel are receiving no fees whatsoever from plaintiff himself. No lawyer is entitled to double-charge for his time. The award of fees by this Court, before being paid by defendant, therefore must be set off by any fees plaintiff may have paid, or be asked to pay, to counsel, either pursuant to a contingent fee arrangement or otherwise.

that date in the Director position had been rated as "fully successful;"

4. Defendant shall restore no hours whatsoever to plaintiff's sick leave account and shall restore 44.5 hours of annual leave to plaintiff and restore one hour of AWOL;

5. Defendant shall correct the records of the Department of Health and Human Services, including plaintiff's official personnel folder, to reflect the jury verdict in this case and the relief ordered by this Court; and

6. Defendant shall pay plaintiff the full costs of bringing these civil actions and the related administrative claims, including the reasonable attorneys' fees, which is $4,219.06 in costs and expenses for plaintiff's counsel, $236.00 in costs for plaintiff, and $206,247.50 in attorneys' fees, for a total of $210,-702.56, subject to any necessary set-off for fees paid by plaintiff or from the jury award in this case, the Court having concluded that such fees are reasonable in light of the work performed and the experience of counsel.

SO ORDERED.