# Proposed Settlement of *Diamond v. Department of Health & Human Services*

The Department of Health & Human Services may lawfully enter into a settlement providing that the positions of specific employees will not be reclassified until they vacate the positions if, in light of the facts of the case and recognizing the inherent uncertainty of litigation, the agency concludes that a court might find that there was a cognizable danger of recurrent sexual discrimination in the reclassifications in violation of Title VII of the Civil Rights Act of 1964.

December 4, 1998

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF HEALTH & HUMAN SERVICES

This memorandum responds to your letter requesting our views on the lawfulness of a provision in a proposed settlement agreement in the case of *Sarah Diamond v. Department of Health & Human Services*, EEOC Case No. 110–96–8155X.[1] We conclude that on a finding of discrimination in the reclassification, a court could enjoin reclassification of the positions of specific employees if the court found some cognizable danger of recurrent violation. If the record contained abundant evidence of consistent past discrimination, a court would likely presume an injunction was appropriate unless the agency presented clear and convincing proof of no reasonable probability of future noncompliance with the law. If the court found only an isolated occurrence of discrimination, plaintiffs would have to provide additional evidence of the cognizable danger of a recurrent violation to justify such an injunction. If, in addition, the facts indicated that the affected employees were close to retirement or, for other reasons, expected to vacate the positions in a relatively proximate and definite period of time, the injunction would be less vulnerable to challenge as overbroad than if the employees were relatively new or otherwise could be expected to stay on for several years.

The Department of Health & Human Services ("HHS") thus may enter into a settlement providing that the positions of specific employees will not be reclassified until they vacate the positions if, in light of the facts and recognizing the inherent uncertainty of litigation, the agency concludes that a court might reasonably find that there was a cognizable danger of recurrent violation in the reclassifications. The risk that a court would find a cognizable danger of recurrent violation could be a risk of retaliation against the employees, of further use of discriminatory practices or procedures in the reclassification, or that the reclassification

---

[1] Memorandum for Dawn Johnsen, Acting Assistant Attorney General, Office of Legal Counsel, from Harriet S Raab, General Counsel, Department of Health & Human Services (Jan. 2, 1997) ("HHS Memorandum") Ordinarily, an inquiry of this nature would be answered by the litigating division of the Department handling the matter, and this Office would merely provide advice to that division if requested. This matter, however, involves an inter-agency dispute, and because the matter is before the Equal Employment Opportunity Commission, there is no litigating division directly involved. We have obtained the views of the Office of Personnel Management, the Equal Employment Opportunity Commission, and the Civil Rights and Civil Divisions of the Department of Justice

of these employees would perpetuate the effects of past discrimination. This is not to say the agency must conclude that it believes future violations will occur. Rather, the agency may settle where it concludes, on the basis of a good faith assessment of the litigation risk, that there is a genuine risk of an adverse judgment on the question.

The lawfulness of including such a term in a settlement, therefore, depends upon the particular facts. Because we are not in a position, and have not been asked, to evaluate the factual predicate for the proposed settlement, including the circumstances surrounding the employment and reclassification of the three employees who will be permitted to remain in their pre-classification positions, we cannot reach a conclusion regarding the final legality of this provision. We conclude, however, that there could be facts under which such relief would be lawful.

## I. Background

Under Title 5 of the United States Code, each position in a covered federal agency is placed in the appropriate "class" and "grade" based upon the level of difficulty, responsibility, and qualification requirements of the work. *See* 5 U.S.C. §§ 5101, 5106 (1994). The Office of Personnel Management ("OPM"), after consulting with the relevant agencies, is charged with developing the standards for placing positions in their proper class and grade. *See* 5 U.S.C. § 5105 (1994). A covered agency has the authority and obligation to "place each position under its jurisdiction in its appropriate class and grade in conformance with standards published by [OPM]." 5 U.S.C. § 5107 (1994). Periodically, OPM must review a sample of the positions in each agency "to determine whether the agency is placing positions in classes and grades in conformance with or consistently with published standards." 5 U.S.C. § 5110(a) (1994). If, during the review pursuant to § 5110(a), OPM finds that an agency has failed to place a position in its proper grade and class, the statute directs OPM to place the position in the appropriate grade and class. *Id.* § 5110(b). If OPM finds that an agency is not classifying positions in accordance with published standards, OPM "may revoke or suspend the authority granted to the agency by section 5107 . . . and require that prior approval of [OPM] be secured" before a classification decision becomes effective for payroll and personnel purposes. 5 U.S.C. § 5111 (1994).

This case arises from a 1995 position classification review at the Centers for Disease Control and Prevention ("CDC"), an agency of HHS. Pursuant to the review, CDC downgraded eighty-two administrative positions. Sixty-eight of the affected employees were women.

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e—2000e-17 (1994 & Supp. II 1996), requires that "[a]ll personnel actions affecting employees or applicants for employment . . . in [federal] executive agencies . . . shall be made

free from any discrimination based on race, color, religion, sex, or national origin.'' 42 U.S.C. § 2000e–16(a). The Equal Employment Opportunity Commission (''EEOC'') has authority to enforce Title VII against federal agencies through an administrative process. *See* 42 U.S.C. § 2000e–16(b). In February of 1996, Sarah Diamond, on behalf of herself and the other sixty-seven affected female employees, filed discrimination complaints against CDC and OPM with the EEOC challenging the classification review as discriminatorily targeting women's jobs for downgrading and as having a discriminatory impact on women employees.[2] *See* Memorandum for Dawn Johnsen, Acting Assistant Attorney General, Office of Legal Counsel, from Lorraine Lewis, General Counsel, Office of Personnel Management at 12 (May 1, 1998) (''OPM Memorandum''). The complaints alleged that sex discrimination tainted ''the entire process, from the identification of the positions which would be reviewed to the audits, and ultimately to the actual downgrades.'' HHS Memorandum at Attachment 4 (Complainants' Response to OPM's Motion to Dismiss at 7 (May 30, 1997)).

The administrative law judge (''ALJ'') assigned to the cases ordered that OPM be joined with CDC as a defendant in a single, consolidated case. *See* HHS Memorandum at 3. In April of 1997, OPM unsuccessfully moved to dismiss the complaint. OPM argued that the complainants had not exhausted administrative remedies and that the EEOC had no jurisdiction over the case. OPM offered three theories as to why EEOC lacked jurisdiction. First, it argued that reclassifying a position is not a ''personnel action'' covered by Title VII. Second, OPM maintained that the EEOC did not have authority to remedy discrimination in a classification decision by ordering an agency to place a complainant in a grade different from the grade assigned by OPM. Third, OPM stated that the EEOC had no authority to review ''the classification system''—i.e. any actions taken under the classification statutes and the corresponding OPM regulations. *Id.* at Attachment 2 (OPM's Motion to Dismiss at 8–10 (Apr. 25, 1997)). The EEOC denied the motion to dismiss. *Id.* at Attachment 6 (Order Denying Motion to Dismiss (Jun. 10, 1997)).

After the ALJ denied OPM's motion, CDC made efforts to locate other positions for the affected employees at their pre-review grade and pay. Many were moved to new positions. CDC restructured the duties of others in order to preserve their pre-review grade. At the time of the HHS request for our views, three class members remained for whom no grade-saving positions could be found. *See* HHS Memorandum at 2.

---

[2] To prevail on a disparate impact claim under Title VII, the complainant must prove that a particular employment practice causes a disparate impact on a group protected by the statute, and the employer must fail to demonstrate that the challenged practice is job related and consistent with business necessity *See* 42 U S C. § 2000e–2(k) (1994). If the employer proves the challenged practice is consistent with business necessity, the complainant will prevail only if she shows that an alternative employment practice, without a similarly discriminatory effect, will accomplish the employer's legitimate business purpose. *See id., Albemarle Paper Co v. Moody,* 422 U.S 405, 425 (1975).

On July 10, 1997, HHS and the class reached a tentative settlement agreement. Paragraph 1 of the settlement provided:

> The class members who have not (a) been placed in other positions at their original grade, or (b) otherwise voluntarily removed to another position, or (c) left the employment of the CDC, through resignation, retirement, or death, shall be allowed to remain in their current positions, at the grade they held prior to the classification review. Said positions will be subject to reclassification consistent with applicable classification standards when the class members who encumber them vacate said positions by any means, including but not limited to selection or reassignment to another position, resignation from CDC, retirement, or death.

OPM Memorandum at Attachment A (Settlement Agreement between Complainant Class and Department of HHS ¶ 1 (Nov. 7, 1997)) ("HHS Settlement Paragraph 1").

OPM objected to paragraph 1 of the proposed HHS settlement. OPM informed HHS that if HHS implemented this provision, OPM would, pursuant to 5 U.S.C. § 5111(a), revoke or suspend HHS's authority to classify positions at CDC. *See* HHS Memorandum at 4.

On November 7, 1997, HHS and the plaintiff class executed a settlement that included paragraph 1 but conditioned its implementation on two events: a determination by the Office of Legal Counsel ("OLC") that the provision was lawful, and agreement by OPM not to revoke the classification authority of HHS or CDC for implementing that paragraph. *See* OPM Memorandum at Attachment A (HHS Settlement ¶ 20).

HHS requested an OLC opinion on two questions.[3] First, in a lawsuit arising out of a reclassification, could the appropriate court-ordered relief, upon a finding of discrimination, include changing the complainant's classification back to the grade held prior to the discriminatory reclassification? Second, if such relief could be granted upon a finding of discrimination, could the agency grant such relief as part of a voluntary settlement? *See* HHS Memorandum at 13–14. HHS argued that the appropriate relief could include changing the complainant's classification back to his or her pre-review grade and that an agency could grant such relief as part of a voluntary settlement.

Upon receiving the HHS Memorandum, we requested the views of OPM, the EEOC, and the Civil and Civil Rights Divisions of the Department of Justice. The EEOC, the Civil Division, and the Civil Rights Division all concurred in

---

[3] Executive Order No. 12146 authorizes the Attorney General to issue binding resolutions of legal disputes between agencies whose heads serve at the pleasure of the President. Exec. Order No 12146, 3 C F.R 409 (1980). That function has been delegated to this office *See* 28 C.F R. § 0 25 (1998)

HHS's position.[4] On May 1, 1998, after reviewing the submissions of the other four offices, OPM submitted its views. OPM did not squarely address the questions posed by HHS, and its memorandum suggests that the grounds of dispute between HHS and OPM have narrowed. OPM now appears to agree that, upon a finding of discrimination, the appropriate relief could include returning the class members to the positions they were in before the discriminatory actions and that a court or the EEOC could order such relief. *See* OPM Memorandum at 2. However, OPM maintains that this relief should be followed by "a nondiscriminatory audit to determine the proper prospective grades of those positions." *Id.* OPM continues to believe that paragraph 1 of the HHS Settlement is unlawful insofar as it "goes beyond the appropriate relief and provides that the incumbents' positions will be subject to reclassification only after they are vacated by the class members who encumber them." *Id.* In OPM's view, that provision inappropriately proposes "to shield these positions from application of pertinent portions of title 5 as long as the class members remain in them." *Id.*

On June 6, 1998, OPM executed a settlement agreement with the class. *See* Settlement Agreement, *Diamond v. OPM*, EEOC No. 110–96–8167X (June 6, 1998) ("OPM Settlement"). The OPM Settlement notes OPM's objection to paragraph 1 of the HHS Settlement, and states that OPM cannot make a determination concerning the effect of paragraph 1 until OLC renders its opinion on the issues. *See* OPM Settlement at ¶ 1.

## II. Analysis

Both OPM and HHS now appear to agree that the two questions submitted by HHS should be answered in the affirmative. First, in a case alleging discriminatory reclassification, the appropriate relief may include returning the complainant to the grade held prior to the discriminatory reclassification.[5] Second, because an agency settlement may include any relief that a court could award upon a finding of discrimination, an agency may grant such relief as part of a voluntary settlement.[6] OPM and HHS continue to disagree, however, on whether, upon a

---

[4] Memorandum for Dawn Johnsen, Acting Assistant Attorney General, Office of Legal Counsel, from Frank W. Hunger, Assistant Attorney General, Civil Division, *Re: HHS/OPM Settlement Dispute* (Apr 20, 1998); Memorandum for Dawn Johnsen, Acting Assistant Attorney General, Office of Legal Counsel, from Ellen J Vargyas, Legal Counsel, EEOC (Feb. 25, 1998), Memorandum for Dawn Johnsen, Acting Assistant Attorney General, Office of Legal Counsel, from Bill Lann Lee, Acting Assistant Attorney General, Civil Rights Division, *Re: HHS Request regarding settlement of Title VII reclassification claim* (undated)

[5] In addition, OPM appears no longer to contend that a reclassification is not a "personnel action" within the meaning of Title VII.

[6] It is established that "Congress intended voluntary compliance to be the preferred means of achieving the objectives of Title VII." *Local No 93, Int'l Ass'n of Firefighters v City of Cleveland*, 478 U S 501, 515 (1986) An agency therefore has the authority to settle an employment discrimination claim without a specific finding of discrimination *See Shaw v. Library of Congress*, 479 F Supp. 945 (D.D.C 1979) (agency settlement of Title VII claim may include retroactive promotion and back pay without adjudicating merits of claim); 29 C F R § 1614 603 (1998) (EEOC regulations require agencies to consider settlement throughout the administrative process). This Office has recognized this principle in concluding that an agency settlement may include money damages if a court could

Continued

261

finding of discrimination, the appropriate relief in this case could include relief of the nature and duration provided in paragraph 1. Specifically, OPM maintains that neither the EEOC nor a district court has the authority to bar reclassification of the complainants' positions until they cease to occupy the positions.

An agency may settle an employment discrimination claim without a specific finding of discrimination. *See supra* note 6. An agency settlement should be based on the agency's good faith assessment of the litigation risk that a court might find complainants entitled to relief. We derive this standard from that which governs the Attorney General in compromising or abandoning claims made against the United States in litigation. The Attorney General may "compromise claims on the basis of her good faith assessment of the litigation risk" that a court might find complainants entitled to relief. *See Waiver of Statutes of Limitations in Connection with Claims Against the Department of Agriculture*, 22 Op. O.L.C. 127, 139–40 (1998) ("USDA Opinion") (citing *The Attorney General's Role as Chief Litigator for the United States*, 6 Op. O.L.C. 47, 60 (1982)).[7] Similarly, an agency settlement of a discrimination claim should be based on the agency's good faith assessment of the litigation risk that a court might find complainants entitled to relief. We therefore consider whether a court, upon a finding of discrimination, could order the relief specified in paragraph 1.

## A.

Title VII requires that "[a]ll personnel actions affecting employees or applicants for employment . . . in [federal] executive agencies . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–16(a). Title VII provides federal employees with both administrative and judicial remedies. The EEOC has authority to enforce Title VII against federal agencies "through appropriate remedies, including reinstatement or hiring of employees with or without back pay, as will effectuate the policies of [§ 2000e–16], and shall issue such rules, regulations, orders and instructions as it deems necessary and appropriate to carry out its responsibilities under this section." 42

---

award such relief m an action by an aggrieved person upon a finding of discrimination *See Authority of USDA to Award Monetary Relief for Discrimination*, 18 Op. O.L.C. 52, 53 (1994) (concluding agency may provide money damages in the settlement of a claim under the Equal Credit Opportunity Act if a court could award monetary relief in a court action) ("Monetary Relief Opinion"). The Comptroller General has applied the same principle in evaluating agency authority to settle claims under Title VII of the Civil Rights Act of 1964, 42 U.S C. §§ 2000e–2000e–17 (1994 & Supp. II 1996), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634 (1994 & Supp. II 1996) ("ADEA"). *See* Monetary Relief Opinion at 53 (discussing 62 Comp. Gen 239 (1983) and 64 Comp. Gen. 349 (1985)).

[7] "[The Attorney General's] determination whether to compromise the claims on the basis of the litigation risk may be guided by her judgment that compromise, rather than litigation, would be in the best interests of the United States or would otherwise promote the ends of justice. [6 Op. O L C at 60]. But her *settlement authority does not allow* her to discard a statutory requirement and determine that, on the basis of her own view of the equities, a claim should be paid, notwithstanding its legal invalidity. Rather, the Attorney General's obligation 'to administer and enforce the Constitution of the United States and the will of Congress as expressed in the public laws,' requires that she enforce [statutory requirements] where they bar a plaintiff's claims. *See id.* at 62." USDA Opinion, 22 Op. O L C. at 140.

U.S.C. § 2000e–16(b). In addition, after completing the administrative process set forth in § 2000e–16(b), a federal employee may file a civil action against his or her agency employer under the provisions governing actions by non-federal employees, which are set forth at 42 U.S.C. § 2000e–5(f). *See* 42 U.S.C. § 2000e–16(c) & (d). Upon a finding that an employer has or is engaging in an unlawful employment practice charged in the complaint, "the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, *reinstatement* or hiring *of employees*, with or without back pay . . . , *or any other equitable relief as the court deems appropriate.*" 42 U.S.C. § 2000e–5(g)(1) (emphasis added).

Congress vested broad equitable discretion in the district courts "to allow the most complete achievement of the objectives of Title VII that is attainable under the facts and circumstances of the specific case." *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 770–71 (1976). That discretion is not unbounded, but is guided by "the principled application of standards consistent with [legislative] purposes." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 417 (1975). A district court decision regarding a Title VII remedy "must therefore be measured against the purposes which inform Title VII." *Id.*

Congress enacted Title VII to accomplish two main purposes. "The primary objective was a prophylactic one"—to prevent employment discrimination and thereby "achieve equality of employment opportunities." *Id.* "It is also the purpose of Title VII to make persons whole for injuries suffered on account of unlawful employment discrimination." *Id.* at 418. An appropriate remedy under Title VII therefore may include relief, including injunctive relief, that will make the plaintiff whole, prevent future violations of the act, and prevent retaliation against complainants. *See Thomas v. Albright*, 139 F.3d 227, 231 (D.C. Cir. 1998) (affirming district court approval of settlement where injunction redresses past and deters future discrimination in assignments and inhibits future retaliation).

"Once employment discrimination has been shown, . . . district judges have broad discretion to issue injunctions addressed to the proven conduct." *EEOC v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1578 (7th Cir. 1997). In determining whether to award injunctive relief, courts look "to whether the discriminatory conduct could possibly persist in the future." *Id.* at 1578–79; *cf. United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953). In cases presenting "abundant evidence of consistent past discrimination," some courts have held that injunctive relief is mandatory "absent clear and convincing proof that there is no reasonable probability of further noncompliance with the law." *NAACP v. Evergreen*, 693 F.2d 1367, 1370 (11th Cir. 1982); *see James v. Stockham Valves & Fittings Co.*, 559 F.2d 310, 354 (5th Cir. 1977) (court should enter injunction unless it can discern "clear and convincing proof of no reasonable probability of further noncompliance with the law"); *EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1519 (9th

Cir. 1989) ("victims of employment discrimination generally are entitled to an injunction against future discrimination, unless the employer proves it is unlikely to repeat the practice"); *United States v. Gregory*, 871 F.2d 1239, 1246–47 (4th Cir. 1989) (where court found pattern or practice of discrimination against women, government need not provide any further evidence to justify an award of prospective relief). In cases presenting isolated occurrences of discrimination, in contrast, the decision to issue an injunction is in the discretion of the district court and some courts do not presume injunctive relief is appropriate. Instead, the plaintiff must demonstrate " 'that there exists some cognizable danger of recurrent violation, something more than the mere possibility.' " *Walls v. Mississippi State Dept. of Pub. Welfare*, 730 F.2d 306, 325 (5th Cir. 1984) (quoting *Grant*, 345 U.S. at 633);[8] *see EEOC v. Alton Packaging Corp.*, 901 F.2d 920, 926 (11th Cir. 1990) (absent evidence of past discrimination, permanent injunction not mandatory); *EEOC v. General Lines, Inc.*, 865 F.2d 1555, 1565 (10th Cir. 1989) (requiring "some cognizable danger" of future violations); *Hayes v. Shalala*, 933 F. Supp. 21, 27 (D.D.C. 1996) (same). Generally, "courts have declined to issue injunctive relief where the employer has shown that its discrimination ceased well before the entry of judgment, where plaintiffs showed only isolated instances of discrimination by key individuals no longer employed, and where the employer otherwise has shown that injunctive relief is unnecessary to prevent future noncompliance." 2 Barbara Lindemann & Paul Grossman, *Employment Discrimination Law* 1746–47 (Paul W. Cane, Jr., ed., 3d ed. 1996) (footnotes omitted).

The form of injunctive relief varies according to the specifics of the case. Courts often enjoin the use of specific, unlawful employment practices found discriminatory, and may enjoin the employer from future discrimination or retaliation against the plaintiffs and others in plaintiffs' class. *See id.* at 1744–46. A district court's judgment regarding the appropriate form of the injunction necessary to make the complainants whole and to prevent future violations of the act generally receives considerable deference. *See Albemarle*, 422 U.S. at 424–25; *Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 931 (9th Cir. 1982) ("the particular remedy granted, however, is not limited to any specific or prescribed form; rather it is left largely to the broad discretion of the district court"); *Selgas v. American Airlines, Inc.*, 104 F.3d 9, 13 (1st Cir. 1997) ("Trial courts have discretion to fashion the awards in Title VII cases so as to fully compensate a plaintiff in a manner that suits the specific facts of the case; this discretion includes the selection of the elements which comprise the remedial recovery."). While it therefore is difficult to generalize about the degree to which injunctive relief must be tailored to preventing

---

[8] In *Grant*, the Supreme Court sustained the district court's refusal to award injunctive relief under the Clayton Act and held that the moving party must satisfy the court that injunctive relief is needed by demonstrating a cognizable danger of a recurrent violation. The presumption that injunctive relief is warranted in cases with abundant evidence of consistent past discrimination is not inconsistent with this requirement. A plaintiff who shows that an employer engaged in a practice, pattern or policy of discrimination has thereby demonstrated that there is "some cognizable danger of recurrent violation" and therefore does not need to provide additional evidence to warrant injunctive relief.

continued discrimination or its effects, or retaliation, it is clear that some fit is required. *See Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1215 (2d Cir. 1993) (upholding injunction against retaliation despite finding that last act of retaliation occurred ten years before in light of danger of future retaliation); *Gaddy v. Abex Corp.*, 884 F.2d 312, 318 (7th Cir. 1989) (holding injunction against retaliation overbroad where there had been no allegation that defendants had ever retaliated, but authorizing injunction tailored to findings of discrimination); *Pecker v. Heckler*, 801 F.2d 709, 711 n.3, 713 (4th Cir. 1986) (plaintiff who had proved discrimination and retaliation was entitled to injunction prohibiting such violations in the future); *Brady v. Thurston Motor Lines*, 726 F.2d 136, 146–47 (4th Cir. 1984) (upholding injunction covering employment practices found to have been discriminatory but directing modification to delete reference to job placement practices, with respect to which no discrimination findings were made); *EEOC v. AIC Sec. Investigations, Ltd.*, 823 F. Supp. 571, 580 (N.D. Ill. 1993) (injunction against retaliation not excessive where there was no allegation of retaliation but evidence demonstrated danger of retaliation), *aff'd in part and rev'd in part on other grounds*, 55 F.3d 1276 (7th Cir. 1995).

As for duration, permanent injunctive relief usually does not contain a termination date. *See, e.g., Malarkey*, 983 F.2d at 1215; *Gaddy*, 884 F.2d at 318; *Pecker*, 801 F.2d at 711 n.3, 713; *Brady*, 726 F.2d at 146–47. In some circumstances, however, courts do specify a limited time period for an injunction to remain in effect. *See AIC*, 823 F. Supp. at 580 (judgment under Americans with Disabilities Act shall remain in effect for three years).

## B.

Paragraph 1 of the HHS Settlement provides for the positions of the three covered complainants to remain at their pre-review grade for as long as those complainants occupy the positions. This settlement provision is permissible if a court, upon a finding of discrimination, could enjoin the reclassification of the positions for as long as the plaintiffs occupy them.

Courts issue a wide range of types of injunctive relief under Title VII. They may, for example, prohibit the use of specific employment practices found to be unlawful, require the employer to take (or refrain from taking) specified steps to remedy and prevent unlawful practices, or, more generally, they may simply bar future discrimination or retaliation against the plaintiffs and others in plaintiffs' class. *See* Lindemann, *supra* at 1744–46. Paragraph 1 of the HHS Settlement appears to fall within the second category, prohibiting the agency from taking a specific action—reclassification—with respect to the positions of certain employees rather than barring the use of a specific standard or practice in reclassification, or simply barring discrimination or retaliation generally. That relief is analogous to lawful injunctions that preserve a complainant's salary or position

notwithstanding an employer's generally applicable personnel policies under which the salary or position might otherwise be downgraded. *See, e.g., Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 248 n.99 (5th Cir. 1974) (injunction requiring "red circling," whereby employees who transfer to new department as trainees to become eligible for higher paid and higher skilled work continue to receive wage rate of old job until eligible for higher pay in new department); *United States v. Bethlehem Steel Corp.*, 446 F.2d 652, 665 (2d Cir. 1971) (same). In order to achieve the same effect of preserving the *status quo ante* for particular employees, other courts have required employers to obtain approval of changes in the employees' status, *see, e.g., United States v. City and County of San Francisco*, 699 F. Supp. 762, 768–69 (N.D. Cal. 1988) (enjoining demotions of firefighters, except for disciplinary reasons), or expressly placed the burden on the employer of showing that a proposed practice is nondiscriminatory, *see, e.g., Hameed v. International Ass'n of Bridge, Structural & Ornamental Iron Workers, Local 396*, 637 F.2d 506, 517–18 (8th Cir. 1980) (enjoining use of selection criteria with disparate impact until such time as they are proved to be job related). These injunctive provisions were appropriate because they were necessary "to allow the most complete achievement of the objectives of Title VII that is attainable under the facts and circumstances of the specific case." *Franks*, 424 U.S. at 770–71.

Evaluation of whether paragraph 1 is an appropriate remedy—that is, whether it will make the complainants whole or prevent future violations of the act, including preventing retaliation—thus requires reference to the alleged violation that it is to remedy and to the danger of a recurrent violation. Complainants allege that the entire reclassification process was tainted by illegal discrimination. *See* HHS Memorandum at Attachment 4 (Complainant's Response to OPM's Motion to Dismiss at 7 (May 30, 1997)). The 1995 reclassification process included several steps. First, CDC conducted a position classification review. The initial CDC review identified questionable classification determinations, particularly in administrative and clerical support positions. Second, CDC conducted a detailed review of all positions in the administrative and clerical support occupational series. That review included audits of the duties and qualification requirements for each position. Third, based on the audits and classification standards developed by OPM, CDC identified several positions which appeared to be misclassified. Finally, CDC executed personnel actions to downgrade eighty-two positions. *See* OPM Memorandum at 11. The complaint alleged a pattern of intentional discrimination and disparate impact affecting all stages of the process.

OPM maintains that the appropriate remedy is to rescind the reclassification and then conduct a nondiscriminatory audit of the positions. The propriety of the proposed remedy, however, depends on the nature of the violation that the remedy is designed to redress. As noted above, the complaint alleges that the entire reclassification process violated Title VII. If a court were to agree, it might, in

light of all the circumstances, conclude that such pervasive discrimination indicates a cognizable danger of a recurrent violation that warrants an injunction against reclassification. Moreover, a court presented with evidence that an agency intended to continue to employ the very practices found discriminatory would have not only the authority, but the duty, to enjoin the agency from using those practices. *See Albermarle*, 422 U.S. at 418; *Roe v. Cheyenne Mountain Conference Resort*, 124 F.3d 1221, 1231 (10th Cir. 1997) (district court abused its discretion by failing to enter injunction in face of defendant employer's continued refusal to revoke its discriminatory policy). OPM's suggested remedy would not provide the requisite relief if there were a cognizable danger of recurrent violations and the agency failed to present clear and convincing proof that there is no reasonable probability of further noncompliance with the law.

On a finding of discrimination in the reclassification, a court could enjoin reclassification of the positions of specific employees if there exists " 'some cognizable danger of recurrent violation, something more than the mere possibility.' " *See Walls*, 730 F.2d at 325 (quoting *Grant*, 345 U.S. at 633). If the record contained "abundant evidence of consistent past discrimination," a court likely would presume an injunction was appropriate unless agencies could present "clear and convincing proof of no reasonable probability of future noncompliance with the law." *See Evergreen*, 693 F.2d at 1370. If the discrimination was found to be an isolated occurrence, plaintiffs would have to provide additional evidence of the cognizable danger of a recurrent violation. *See Walls*, 730 F.2d at 325.

The injunction must fit, to some degree, the possible recurrent violation it is to remedy. *See supra* Part II.A. We are not familiar with the factual record in this case, in particular the circumstances surrounding the employment of the three affected complainants. We can, however, conceive of findings that would justify such an injunction. If, for example, the record demonstrated a cognizable danger of retaliation against the three complainants or their class, an injunction barring reclassification of the positions of the three employees until they vacate the positions would address that possible recurrent violation. Such an injunction might also be justified where the record demonstrated a cognizable danger that the agency would use discriminatory practices or procedures in the reclassification, or that the reclassification of these employees would perpetuate the effects of past discrimination. If, in addition, the facts indicated that the affected employees were close to retirement or otherwise expected to vacate the positions in a relatively short period of time, the injunction would be less vulnerable to challenge as overbroad than if the employees were relatively new and could be expected to stay on for many years.

C.

OPM maintains that an injunction providing the relief specified in paragraph 1 would violate 5 U.S.C. § 5107, which requires agencies to place positions in the appropriate class and grade pursuant to OPM's classification standards. In OPM's view, such an injunction also would contravene OPM's statutory authority to mandate and conduct reclassifications under 5 U.S.C. §§ 5110 and 5112. *See* OPM Memorandum at 13. OPM therefore argues that the settlement is barred under the principle that the authority to settle litigation "does not include license to agree to settlement terms that would violate the civil laws governing the agency." *See Executive Bus. Media v. Department of Defense,* 3 F.3d 759, 762 (4th Cir. 1993) (*"EBM"*).

*EBM* involved a settlement arising from a publishing firm's allegations that the Department of Defense ("DOD") breached its contract to publish a DOD employee newsletter. The publishing firm offered to dismiss its suit if DOD modified the newsletter contract to provide for the firm to publish an annual DOD guidebook that was not covered by the original contract. Plaintiff EBM, a competitor publishing firm, sued to void the contract for the guidebook on grounds that DOD failed to comply with regulations requiring competitive bidding. The Fourth Circuit found in favor of the plaintiff, holding that the Attorney General's plenary authority over litigation "does not include license to agree to settlement terms that would violate the civil laws governing the agency." *EBM,* 3 F.3d at 762.

The proposed HHS Settlement can be distinguished from *EBM.* The relief provided in the *EBM* settlement was not within the class of remedies available to a court upon a finding of breach of contract. *See United States v. Sherwood,* 312 U.S. 584 (1941). If a court found that the CDC reclassification violated Title VII, *EBM* would not preclude the court from enjoining OPM and HHS from using any employment practices found discriminatory until those standards and procedures were found non-discriminatory. Nor would it preclude an order barring the reclassification of certain employees for a specific duration. In those circumstances, the injunction would not require the government to perform acts unauthorized by statute. Rather, it would order the government to cease discriminating in the performance of authorized acts.

If, as described above in part II.A, the *Diamond* settlement provision is sufficiently tied to a possible violation of Title VII and necessary to make plaintiffs whole, that provision differs from the guidebook contract offered in settlement in *EBM.* Title VII reflects a congressional determination that federal personnel decisions shall be free from discrimination, and that the equity powers of the courts are available to enforce this principle. By authorizing Title VII actions against federal agencies, Congress has empowered the courts to order the relief required to cure violations of the act. *See Mitchell v. DeMario Jewelry, Inc.,* 361 U.S. 288, 291–92 (1960) ("When Congress entrusts to an equity court the enforce-

ment of prohibitions contained in a regulatory enactment, it must be taken to have acted cognizant of the historic power of equity to provide complete relief in the light of the statutory purposes.''); *see also Porter v. Warner Holding Co.*, 328 U.S. 395, 397–98 (1946).

## III. Conclusion

HHS may enter into a settlement providing that the positions of specific employees will not be reclassified until they vacate the positions if, in light of the facts and recognizing the inherent uncertainty of litigation, the agency concludes that a court might find that there was some cognizable danger of recurrent violation in the reclassifications. The possible finding of a cognizable danger of recurrent violation could be a danger of retaliation against the employees, of the use of discriminatory practices or procedures in the reclassification, or that the reclassification of these employees would perpetuate the effects of past discrimination. If, in addition, the facts indicated that the affected employees were close to retirement or otherwise expected to vacate the positions shortly, the provision would more closely fit the danger of a recurrent violation than if the employees were relatively new and could be expected to stay on for many years.

RANDOLPH D. MOSS
*Acting Assistant Attorney General*
*Office of Legal Counsel*
